# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3426

_____

United States of America,         *
         *
      Plaintiff/Appellant,     *
         *  Appeal from the United States
   v.            *  District Court for the Southern
         *  District of Iowa.
Jason Neal Lighthall,      *
         *
      Defendant/Appellee.    *

_____

Submitted: October 21, 2004
Filed: November 23, 2004

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

The government appeals the district court's[1] twenty-month downward departure arguing it was not legally or factually supported. We affirm.

## I

Beginning in January 2002, twenty-one-year-old Jason Lighthall, a student at Iowa State University, began collecting and disseminating pornographic materials

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

using his university internet account. On March 25, 2002, university officials discovered Lighthall's activities and reported them to police who obtained a search warrant for his dormitory room and seized his computer and various related items. Police discovered approximately 7000 pornographic images on the computer, including child pornography.

Lighthall cooperated and provided police with the online user names, passwords and email programs he used to trade in child pornography. He admitted knowing the images constituted prohibited child pornography. Shortly thereafter, Lighthall moved out of the dormitory into his parents' home. Soon after moving into his parents' house, and despite having provided police with his user names and passwords, Lighthall resumed using his university internet account to trade in child pornography. University officials again discovered the activity and reported it to police. A search of Lighthall's room uncovered numerous computer disks containing images of child pornography collected between April 8, 2002, and May 2, 2002. To avoid detection, Lighthall had deleted the images from the hard drive of his parents' home computer and downloaded them to disks which he hid in his bedroom closet.

Police arrested Lighthall and charged him with 1) distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), 2) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), 3) receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), 4) a second count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and 5) forfeiture under 18 U.S.C. § 2253. Lighthall pleaded guilty and the court ordered a presentence investigation. The presentence investigation report concluded Lighthall's base offense level was 17, and after taking into account various upward and downward adjustments, recommended an adjusted offense level of 27 with a sentencing range as a category I offender of 70-87 months. Lighthall does not dispute these calculations.

Prior to sentencing, Lighthall moved for a 5K2.13 downward departure on the basis of 1) post-offense rehabilitation, 2) the need to continue sex-therapy treatment which would be interrupted by incarceration, 3) susceptibility to abuse in prison, and 4) diminished capacity. The government objected to any downward departure.

At the sentencing hearing, Dr. Nicholas Tormey testified he had provided twice weekly sex-therapy treatments to Lighthall for eleven months. Tormey testified Lighthall was socially inept, isolated, and found fulfillment through his ability to master the internet. He testified Lighthall was compelled to resume his search for pornography "because it had been so ingrained in him," and was Lighthall's "way of managing" because it "distracts him from his lack of success in other areas" and "from his significant anxiety in dealing with . . . peers." Tormey further testified Lighthall had a compulsion to gather pornography and "couldn't not do it without some kind of outside intervention." Finally, Tormey concluded Lighthall suffered from a "significant mental illness" involving low level depression and "obsessive-compulsive disorder that's reflected in the perfectionist way that he went about collecting all of [his] erotica."

Lighthall also presented a report from a second psychologist, Dr. Craig Rypma, who reported Lighthall "harbored intense feelings of inferiority and insecurity," was socially inept and a loner, had a "schizoid" lifestyle, and was sexually unadjusted, finding sexuality "distressing, frustrating, and unsatisfying." Dr. Rypma concluded Lighthall's "naivete, immaturity concerning issues of sexuality, poor self-esteem, and poor social skills . . . contributed greatly to [his] retreat into the world of his computer as a . . . desperate effort to understand his emerging sexuality."

The government presented evidence opposing the first three bases asserted for the downward departure, but relied solely on cross-examination to rebut the claim of diminished capacity. On cross-examination, Tormey testified his opinions were based

on Lighthall's self-reporting, and eleven months of twice weekly contact with Lighthall during counseling sessions.

The district court accepted the psychological evidence and concluded:

With regard to departure under 5K2.13, through the reports, and the record, and the testimony of Dr. Tormey . . . viewing everything involved, including the defendant's compulsive activity, I do feel that the record establishes under 5K2.13, a justified downward departure. In that the defendant committed the offense while suffering from a significantly reduced mental capacity, and that being under application note 1. I think it covers (b), where it says that significantly reduced mental capacity means that the defendant, although convicted, has a significantly impaired ability to control behavior that the defendant knows is wrongful.

This is one of the strongest cases that I have ever seen that falls within that definition.

After being caught in – at Iowa State with this material he returned home, and even though he knew he was facing serious trouble, he turned right around and proceeded to keep doing it.

Sent. Tr. at 77-78.

Based on these findings and conclusions, the district court sentenced Lighthall to 70 months and awarded a twenty-month downward departure.[2] The court denied a departure on all other grounds and this appeal followed. On appeal, the government argues Lighthall's compulsive-obsessive disorder does not legally or factually support the downward departure.

---

[2]Lighthall had spent four months in jail and to ensure he received credit for those four months the district court sentenced him to 46 months.

"Whether the district court based a departure on a permissible factor . . . is to be reviewed de novo." United States v. Flores, 336 F.3d 760, 763 (8th Cir. 2003). "A sentencing court's factual findings[, however,] are still reviewable for clear error and the reasonableness of a permissible departure for abuse of discretion." Id. If a district court departs from the guideline range, the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub.L. No. 108-21, § 401(d), 117 Stat. 650, 670 (2003), requires the court to state its reasons for departing "with specificity in the written order of judgment and commitment." § 401(c), 117 Stat. at 669 (amending 18 U.S.C. § 3553(c)(2)).

"A factor is a permissible basis for departure if it 'advances the objectives set forth in [18 U.S.C. §] 3553(a)(2),' 'is authorized under [18 U.S.C. §] 3553(b),' and 'is justified by the facts of the case.'" Flores, 336 F.3d at 763 (quoting 18 U.S.C. § 3742(j)(1)). Section 5K2.13 of the United States Sentencing Guidelines permits a downward departure when a defendant commits an offense "while suffering from a significantly reduced mental capacity" if it "contributed substantially to the commission of the offense." Application Note 1 states: "'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."

The government first contends there was no factual basis for the departure, and attacks Dr. Tormey's opinions arguing they were based on Lighthall's self-reporting and were not verified by independent empirical testing. Further, the government argues Lighthall's attempts to avoid detection by deleting the pornography from the hard drive and downloading it to disks belies his claim he was unable to control his

behavior. Rather, it shows he was calculating and able to alter his behavior when necessary to continue his activities.

The government does not dispute Dr. Tormey's and Dr. Rypma's qualifications to provide expert opinions. Dr. Tormey treated Lighthall for eleven months at twice weekly sessions and concluded Lighthall suffered from "a significant mental illness" involving, among other things, an "obsessive-compulsive disorder." Sent. Tr. at 22-23. Tormey further testified Lighthall had a compulsion to gather pornography and "couldn't not do it without some kind of outside intervention." Sent. Tr. at 18. Despite this testimony, the government chose not to call an expert to rebut the opinions, but instead relied on cross-examination which proved ineffective. Accordingly, we conclude there was sufficient evidence to establish Lighthall suffered from a significantly reduced mental capacity, i.e., an obsessive-compulsive disorder, and the district court was not clearly erroneous in crediting the unrebuttedd expert testimony. Flores, 336 F.3d at 763 ("A sentencing court's factual findings are still reviewable for clear error.").

The government also argues Lighthall's attempts to avoid detection demonstrate § 5K2.13 is inapplicable. We disagree. Section 5K2.13 is targeted at offenders who demonstrate "a significantly impaired ability to . . . control behavior that the defendant knows is wrongful." Application Note 1(B). Lighthall's attempts to avoid detection while collecting child pornography show he knew his actions were wrongful. Further, Lighthall's attempts to avoid detection do not undercut the district court's finding of diminished capacity. It was precisely because Lighthall felt compelled to engage in illegal behavior that he had to avoid detection; if caught, he would have been stopped.

Next, the government contends Lighthall's constellation of mental disorders provides insufficient legal grounds for a downward departure under 5K2.13. Specifically, the government argues Lighthall's behavior does not fall outside the

heartland of cases involving child pornographers because all are presumptively compelled to collect illegal pornography. Again, we disagree with the government's analysis.

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

18 U.S.C. § 3553(b).

In Koon v. United States, 518 U.S. 81, 95-96 (1996), the Supreme Court listed several factors, e.g., race, sex, national origin, religion, which courts are expressly forbidden from taking into account during sentencing, while other permissible sentencing factors are denoted as encouraged or discouraged. See 5K2.1-21 (enumerating some of the factors the Sentencing Commission believed were not adequately accounted for in the guidelines). "The Sentencing Commission provides guidance by identifying in subpart 5K2 a number of factors that it 'has not been able to take into account fully in formulating the guidelines,' U.S.S.G. § 5K2.0, which serve as encouraged bases for departure." United States v. Silleg, 311 F.3d 557, 561 (2d Cir. 2002).

The Koon Court offered additional guidance to lower courts when dealing with various sentencing factors that might arise.

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. *If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not*

*already take it into account.* If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guidelines, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.

518 U.S. at 95-96 (emphasis added).

Section 5K2.13 lists "diminished capacity" as one of the enumerated factors under which a district court is authorized to depart if the factor is not already taken into account by the applicable guideline. U.S.S.G. § 2G2.2, the guideline applicable to Lighthall's case, does not "contain[] any language suggesting that diminished capacity is not a permissible basis for departure in child pornography cases." Silleg, 311 F.3d at 562 (applying U.S.S.G. § 2G2.1).[3] Moreover, § 2G2.2 contains no language indicating the Sentencing Commission took diminished capacity into account when formulating the guideline. Id. at 562-63. Thus, the district court properly considered Lighthall's claim of diminished capacity. Further, because diminished capacity is not taken into account under § 2G2.2, the district court did not, as argued by the government, have to find "the factor is present to an exceptional degree or in some other way [which] makes the case different from the ordinary case where the factor is present." Koon, 518 U.S. at 95-96. In other words, the "heartland" analysis does not apply to this departure.

Application Note 1 to § 5K2.13 states the section applies when a "'[s]ignificantly reduced mental capacity' . . . significantly impaired [a defendant's] ability to . . . control behavior that the defendant knows is wrongful." Our review of the record leads us to conclude the district court's application of § 5K2.13 to the facts of this case was appropriate. Lighthall knew his conduct was illegal. After he was

---

[3]The PROTECT Act, passed on April 30, 2003, amended § 5K2.13 making it inapplicable in child pornography cases. The amendment is not controlling here because Lighthall's conduct predated the amendment.

caught and provided his online user names and passwords to police, he continued to gather pornography even though detection was a virtual certainly. Finally, Dr. Tormey's unrebutted testimony concluded Lighthall suffered from an obsessive-compulsive disorder making it impossible for him to stop absent outside intervention. Based on these facts, we affirm the district court's application of § 5K2.13. Additionally, we hold the extent of the departure was reasonable. Flores, 336 F.3d at 763 (holding the reasonableness of a departure is reviewed for an abuse of discretion).

One additional argument advanced by the government is the district court's refusal to follow the public policy announced in the PROTECT Act against downward departures for child pornographers.

The PROTECT Act was passed on April 30, 2003. Among other changes, the Act amended § 5K2.13 making it inapplicable in child pornography cases. Accordingly, had Lighthall's conduct occurred after April 30, 2003, the district court would have been precluded from departing downward based on diminished capacity. Though Lighthall's conduct predated the Act, the government argues the district court erred in refusing to apply the amendment because this court has repeatedly recognized that district courts should take into account the policy considerations underlying guideline amendments in deciding whether a departure is appropriate.

We have stated "we believe that subsequent guidelines can be a useful touchstone in making the determinations of reasonableness called for in upward departure cases." United States v. Saffeels, 39 F.3d 833, 838 (8th Cir. 1994) (citing United States v. Willey, 985 F.2d 1342, 1350 (7th Cir. 1993)). The government, however, conceded when it brought the amendment to the district court's attention and at oral argument, that the court was not bound to follow the amendment. Therefore, we find no error.

The judgment of the district court is affirmed.

_____