NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1928
_____

UNITED STATES OF AMERICA

v.

THOMAS SWEGER,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:07-cr-0103)
District Judge:  Honorable John E. Jones III
_____

Submitted Under Third Circuit LAR 34.1(a)
January 6, 2011

Before:  AMBRO and FISHER, *Circuit Judges*, and SÁNCHEZ,[*] *District Judge*.

(Filed: February 8, 2011)
_____

OPINION OF THE COURT
_____

---

[*] The Honorable Juan R. Sánchez, District Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SÁNCHEZ, *District Judge*.

Appellant Thomas Sweger pled guilty to one count of distribution and possession with intent to deliver heroin and fentanyl in violation of 21 U.S.C. § 841(a)(1), and the District Court sentenced him to 132 months of imprisonment. On appeal, Sweger argues the District Court erred in granting an upward departure pursuant to United States Sentencing Guideline § 5K1.2. He also argues the District Court abused its discretion in denying his request for a downward variance. For the reasons set forth below, we will affirm.

I.

On February 23, 2007, Sweger sold Isaac Kennedy ten bags of a fentanyl-laced heroin known as "Devil's Reject." Kennedy had purchased Devil's Reject from Sweger a week earlier and requested to purchase it again. Following his purchase, Kennedy snorted some of the heroin in Sweger's presence, and Sweger warned him to be careful when ingesting the heroin because of the fentanyl, instructing him to start with a quarter bag and not to ingest an entire bag at one time.

On February 24, 2007, Kennedy was found dead in his bedroom. An autopsy performed by Dr. Wayne Ross, a specialist in neuropathology, concluded the cause of Kennedy's death was multiple drug toxicity. Although a number of substances were present in Kennedy's blood and liver at the time of his death, fentanyl was the only substance present at a lethal level.

On February 27, 2008, Sweger pled guilty to one count of distribution and possession with intent to distribute heroin and fentanyl in violation of 21 U.S.C. § 841(a)(1), pursuant to a written plea agreement. In the plea agreement, the Government noted its intention to seek an upward departure to offense level thirty-eight pursuant to U.S.S.G. § 5K2.1 because death resulted from Sweger's drug sales. (App. 68.) Sweger disputed the applicability of this departure.

In the Presentence Investigation Report (PSR), the probation officer concluded Sweger was accountable for possessing between eight and sixteen grams of heroin/fentanyl and assigned him a base offense level of eighteen and, after a three-level reduction for acceptance of responsibility, a total offense level of fifteen. Based on an offense level of fifteen and a criminal history category of VI, the probation officer calculated Sweger's advisory guideline range at forty-one to fifty-one months. The probation officer also suggested the District Court might wish to consider an upward departure pursuant to § 5K2.1 if Sweger's actions were determined to have resulted in Kennedy's death, noting the "guideline calculations do not take the death of Kennedy into account." Sweger objected to such a departure, maintaining he was not responsible for Kennedy's death.

Prior to sentencing, Sweger stipulated that (1) Kennedy died of multiple drug toxicity; (2) Kennedy had a lethal level of fentanyl in his body when he died; and (3) Sweger was the source of the heroin that caused Kennedy to have fentanyl in his system.

3

(App. 111-117.) Although Sweger initially appeared to concede the fentanyl-laced heroin he sold had caused Kennedy's death (App. 117), at a subsequent evidentiary hearing, Sweger presented testimony from pharmacology expert Robert Julien, M.D., Ph. D., in an effort to establish that the Government had not met its burden to show Kennedy's death had resulted from the Devil's Reject heroin Sweger sold him.

Dr. Julien testified fentanyl affects the body "[e]xtremely rapid[ly]" after being ingested, after which the level of fentanyl in a person's blood "drops rapidly." (App. 132-34.) As a result, Dr. Julien stated he would "expect a fatality from fentanyl overdose to occur rapidly [after ingestion], and if one survives that they have a tolerance to the drug in that it did not kill them." (App. 136.) Dr. Julien agreed the level of fentanyl in Kennedy's blood was potentially lethal and testified that if Kennedy "had used the fentanyl immediately prior to his death[,] [Julien] would then say this level was most likely fatal." (App. 143, 158-59.) Because Kennedy did not die until three to ten hours after ingesting the Devil's Reject heroin, however, Dr. Julien opined that "much [of the fentanyl] would have been metabolized and this level in him likely would not have been lethal." (App. 159.) Dr. Julien also stated he could not rule out the possibility Kennedy may have died of an accidental or intentional insulin overdose, as Kennedy was an insulin dependent diabetic who had previously attempted to kill himself by overdosing on insulin, and the autopsy did not test Kennedy's insulin or glucose levels. (App. 137-38, 141, 156.) Dr. Julien concluded fentanyl "likely was not" the sole cause of Kennedy's death

4

because it "had last been used several hours earlier." (App. 160.) However, he agreed fentanyl contributed to Kennedy's death, regardless of when it was used. (*Id.*) Elsewhere in his testimony, Dr. Julien explained:

> [w]ith an accidental overdose, that could cause . . . him to lose consciousness, which may be enough to take this residual level of fentanyl that's in the blood to cause further unconsciousness and present a point where he cannot essentially lift his chin. As he sleeps he gets airway obstruction, develops pulmonary edema, as was described in the . . . autopsy report, and eventually died from hypercarbia, which is a high blood $CO_2$, and hypoxia, which is a low blood oxygen level.

(App. 141-42.)

The District Court granted the Government's motion for an upward departure pursuant to § 5K2.1, finding the Government had proved by a preponderance of the evidence that the fentanyl-laced heroin Sweger sold played a causal role in Kennedy's death, and departed upward to offense level thirty-eight pursuant to U.S.S.G. § 2D1.1(a)(2). By separate order, the District Court granted in part Sweger's motion for a downward departure pursuant to U.S.S.G. §4A1.3(b)(1), finding Sweger's criminal history category of VI over-represented the seriousness of his criminal record and instead assigning him a criminal history category of IV.[1] With a three-level reduction for acceptance of responsibility, Sweger's offense level was thirty-five, yielding an advisory guideline range of 235-293 months. Because the statutory maximum term of

5

imprisonment was 240 months, Sweger's effective advisory guideline range became 235-240 months.  At sentencing, the District Court granted the Government's motion for a downward departure pursuant to § 5K1.1 based on Sweger's substantial assistance to law enforcement, denied Sweger's request for a downward variance, and sentenced Sweger to 132 months.  Sweger timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  We exercise plenary review over the District Court's decision to depart upward, reviewing the District Court's factual findings for clear error and the reasonableness of the degree of the departure for an abuse of discretion.  *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc); *United States v. Yeaman*, 194 F.3d 442, 456 (3d Cir. 1999).  We review the substantive reasonableness of the sentence imposed for an abuse of discretion.  *See United States v. Wise*, 515 F.3d 207, 223 (3d Cir. 2008).

## III.

Sweger first argues the District Court erred in granting an upward departure pursuant to § 5K2.1 because the record does not support a finding that Kennedy's death resulted from Sweger's drug sale.  Section 5K2.1 permits a court to increase a sentence

---

[1] The District Court denied Sweger's motion pursuant to U.S.S.G. § 5K2.10, which permits a downward departure "[i]f the victim's wrongful conduct contributed significantly to provoking

above the authorized guideline range "if death resulted" from the defendant's conduct. Sweger concedes that, to support imposition of an upward departure pursuant to § 5K2.1, the Government must show only a causal connection between Sweger's drug sale and Kennedy's death, not proximate cause. (*See* Appellant's Br. 18.) We reached the same conclusion in *United States v. Robinson*, 167 F.3d 824 (3d Cir. 1999), interpreting a similarly worded provision of 21 U.S.C. § 841(b)(1)(C), which requires a mandatory minimum sentence in certain drug cases "if death or serious bodily injury results from the use of such substance." We held the "results from" language of the statute does not require the government to show the defendant's conduct was the proximate cause of death, noting "[i]t is obvious Congress intended . . . that the . . . mandatory minimum would apply if death or serious bodily injury resulted from the use of the substance without regard for common law proximate cause concepts." *Robinson*, 167 F.3d at 831.

Sweger argues Dr. Julien's testimony that fentanyl "likely was not" the sole cause of Kennedy's death, given the protracted time frame between Kennedy's use of the drug and his death, precludes a finding of the requisite causal connection between Sweger's drug sale and Kennedy's death. He also asserts the District Court erred in rejecting as speculative the possibility Kennedy overdosed on insulin upon finding Sweger had not proved this alternative theory "beyond peradventure."

---

the offense behavior."

7

As the District Court noted, however, although Dr. Julien opined that fentanyl was not likely the sole cause of Kennedy's death, he agreed fentanyl contributed to Kennedy's death regardless of when it was used.[2] (App. 160.)  Indeed, Dr. Julien described the manner in which fentanyl could have contributed to Kennedy's death if Kennedy had also overdosed on insulin on the night he died, explaining that the residual level of fentanyl in Kennedy's blood could have caused further unconsciousness, leading him to "get[] airway obstruction, develop[] pulmonary edema, as was described in the . . . autopsy report, and eventually die[] from hypercarbia . . . and hypoxia." (App. 141-42.)  Thus, the District Court concluded that even accepting Dr. Julien's insulin overdose theory, fentanyl would have been a contributing cause of Kennedy's death, and an upward departure pursuant to § 5K2.1 would still be warranted.  (App. 17-18, 31.)  We find no clear error in this determination.

Sweger also argues the District Court abused its discretion in departing to offense level thirty-eight.  Sweger contends because there is no evidence he engaged in premeditated murder, the District Court instead should have used offense level eighteen, the offense level associated with involuntary manslaughter involving reckless conduct under U.S.S.G. § 2A1.4(a)(2)(A).

---

[2] When asked directly whether there was a "causal connection" between Kennedy's fentanyl use and his death, Dr. Julien equivocated, responding "not necessarily." (App. 160-61.)  However, Dr. Julien's opinion that fentanyl contributed to Kennedy's death regardless of when it was used was unequivocal.  (App. 160.)

In departing upward pursuant to § 5K2.1,

> [t]he sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. . . . The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction . . . already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

U.S.S.G. § 5K2.1. Here, in determining the extent of the departure, the District Court acknowledged Sweger "likely did not intend to kill Kennedy," but found Sweger "should have had every expectation that someone could be harmed, or die, as a result of ingesting the heroin distributed by him" as "[h]eroin is illegal and dangerous, and the ingestion of it alone may kill even a first-time user." (App. 19 n.7.) Sweger argues this finding is contrary to the record evidence because Kennedy had previously purchased Devil's Reject heroin from Sweger without incident and specifically requested another dose on the night he died. However, the PSR shows Sweger knew the heroin he sold Kennedy was dangerous, as he repeatedly warned Kennedy "to be careful when ingesting the heroin" and told him "to start with a quarter bag, and not to ingest an entire bag at one time." (PSR 3.) The record thus supports the District Court's finding.

Moreover, we perceive no abuse of discretion in the District Court's selection of U.S.S.G. § 2D1.1(a)(2) as providing the most analogous offense level. Section

9

2D1.1(a)(2) provides for an offense level of thirty-eight "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), . . . and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." As the District Court noted, Sweger's conviction "implicated the penalties contained in [21 U.S.C.] § 841(b)(1)(C)."[3] (App. 19.) Having determined a substantial increase was appropriate, the District Court acted within its discretion in increasing Sweger's offense level to the level that would have applied if Sweger's offense of conviction established death resulted from the use of the controlled substances he distributed.

Finally, Sweger argues his above-Guidelines sentence is substantively unreasonable because the District Court abused its discretion in denying a downward variance on the basis that the Guidelines significantly overstated the seriousness of his criminal history. He argues the 132-month sentence the District Court imposed is substantively unreasonable in light of his history of relatively minor, non-violent crimes which were fueled by his drug addiction.[4]

---

[3] Section 841(b)(1)(C) specifies the penalties for distributing and possessing with intent to distribute Schedule I and II controlled substances in quantities less than those specified in § 841(b)(1)(A) and (b)(1)(B).

[4] Sweger does not argue the District Court committed procedural error by failing to consider the nature of his criminal history. Nor would the record support such an argument. The District Court reviewed Sweger's criminal record in addressing his motion for a downward departure pursuant to U.S.S.G. § 4A1.3(b)(1), and agreed that, given the non-violent nature of his prior offenses, a criminal history category of VI over-represented the seriousness of his criminal history. The Court remained troubled, however, by Sweger's "stark history of recidivism," which included fifteen convictions in the eight years prior to the offense of conviction in this case. (App. 39-40.) Accordingly, the Court departed only to a criminal history category of IV, so

As we have previously recognized, the abuse-of-discretion standard "means that, absent any significant procedural error, we must 'give due deference to the district court's determination that the § 3553(a) factors, on a whole,' justify the sentence." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Where, as here, the District Court's sentence is procedurally sound, "we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* The record in this case reflects the District Court's meaningful consideration of each of the § 3553(a) factors, including Sweger's criminal history and drug addiction as well as the fact of Kennedy's death. In these circumstances, we cannot conclude the sentence imposed by the District Court was substantively unreasonable.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.

---

as to "adequately account[] for the seriousness of [Sweger's] criminal history and the likelihood that he will recidivate." (App. 40.) The District Court again considered Sweger's criminal history in addressing the § 3553(a) factors at sentencing, noting that, while Sweger's drug addiction might explain his "astonishing record," it did was "hardly an excuse." (App. 192-93.)

11