# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2502

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Renee Nossan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 16, 2011
Filed: August 3, 2011

_____

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____

RILEY, Chief Judge.

Renee Nossan pled guilty to distributing heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Nossan appeals her 60-month sentence, arguing the district court[1] erred in (1) departing upward from the advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range pursuant to U.S.S.G. § 5K2.1 (policy statement), and (2) imposing restitution. We affirm.

_____

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

## I. BACKGROUND

On January 31, 2009, Wallace Gunderson was found dead in his Spearfish, South Dakota, apartment. An autopsy indicated heroin toxicity caused Gunderson's death. The autopsy also revealed Gunderson had cocaine in his system and had an enlarged heart that could have contributed to his death. A joint investigation was launched by the South Dakota Division of Criminal Investigation and the Spearfish Police Department (collectively, law enforcement) inquiring into the drug-related death of the 24-year-old.

Two searches of Gunderson's apartment produced (1) a syringe filled with clear liquid, (2) a small balloon containing .41 grams of black tar heroin, (3) assorted drug paraphernalia, and (4) two padded envelopes addressed to Gunderson with two different Phoenix, Arizona, return addresses. One of the envelopes, with a return address of "R.N." at "E. Mountain S." was postmarked August 8, 2008. The other envelope had a return address of "Michelle Lamport" at "West River [S]treet" and was postmarked January 29, 2009.

Acting on confidential information that Nossan may have sent the drugs to Gunderson, law enforcement interviewed Nossan. Nossan explained that in December 2008 she and Gunderson purchased heroin in Phoenix. Gunderson carried the heroin home to Spearfish. Gunderson later contacted Nossan several times and asked her to send more heroin. Nossan admitted twice mailing heroin to Gunderson and also some cocaine because she knew Gunderson liked to mix the two drugs. Nossan described one package as "containing black tar heroin, a single balloon of cocaine, and syringes." Nossan admitted using Michelle Lamport (Gunderson's former girlfriend) as the sender's name on one of the packages. Nossan claimed Gunderson arranged the drug purchases.

A grand jury charged Nossan with distributing heroin (Count 1) and cocaine (Count 2). The parties agreed to a pre-plea presentence investigation, resulting in a

Presentence Investigation Report (PSR). The PSR recommended the district court hold Nossan responsible for .41 grams of heroin, setting Nossan's base offense level at 12. Finding no adjustments applicable, the PSR calculated a total offense level of 12, a criminal history category of I, and an advisory Guidelines range of 10 to 16 months imprisonment. The PSR noted Gunderson's death might warrant a departure pursuant to U.S.S.G. § 5K2.1. The PSR did not recommend restitution, stating "[b]esides society as a whole, there are no identifiable direct victims in this case." Gunderson's family later requested restitution for costs associated with Gunderson's funeral and burial.

On June 16, 2010, at a combined plea and sentencing hearing, Nossan pled guilty to Count 1. As part of her plea, Nossan agreed to the following statement of factual basis: "On or about January, 2009, Ms. Nossan intentionally mailed a package to an address in Spearfish, SD, knowing the package contained heroin, a Schedule I controlled substance." The district court dismissed Count 2 of the indictment on the motion of the government.

The government moved for an upward departure pursuant to U.S.S.G. § 5K2.1, arguing Nossan's distribution of drugs resulted in Gunderson's death. Over Nossan's objection, the district court agreed with the government, determining Nossan's case was not "within the heartland of what normally would fall within [the] advisory guideline range" because "[m]ost of these cases don't result in somebody's death and this one did." The district court found Gunderson's death "more likely than not . . . resulted from the use of heroin sent to him by Nossan." Having considered Nossan's long-term, co-dependent relationship with Gunderson, her addiction, and the level of planning and knowledge demonstrated by her mailing of the packages with false information, the district court sentenced Nossan to 60 months imprisonment.

At the same hearing, Nossan contested restitution, arguing Gunderson was a participant in the crime and thus not a "victim" eligible for restitution under 18 U.S.C.

§ 3663(a)(1)(A). Concluding Gunderson was not a participant in the charged offense and was a victim, the district court imposed $22,626.40 in restitution to Gunderson's family. This appeal followed.

## II. DISCUSSION

### A. Section 5K2.1 Departure

Nossan asks us to vacate her sentence and remand for resentencing within the 10- to 16-month advisory Guidelines range, claiming (1) the record did not justify an upward departure, (2) "the district court misapplied section 5K2.1," and (3) the resulting 60-month sentence was substantively unreasonable.

We review the district court's factual findings supporting a departure "for clear error and the reasonableness of a permissible departure for abuse of discretion." United States v. Lighthall, 389 F.3d 791, 794 (8th Cir. 2004). "A court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant factor that should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Mousseau, 517 F.3d 1044, 1048-49 (8th Cir. 2008) (quoting United States v. Rouillard, 474 F.3d 551, 556 (8th Cir. 2007), abrogated on other grounds as recognized in United States v. Barrett, 552 F.3d 724, 726-27 (8th Cir. 2009) (internal marks omitted)).

We first consider whether the district court clearly erred in determining Nossan's conduct caused Gunderson's death. Nossan claims "there is no way to connect the drugs in Gunderson's system with the drugs Nossan mailed" and "[a]t best, the evidence showed a mere 'possibility' that the drugs in Gunderson's system were the exact ones mailed by Nossan." We disagree.

Section 5K2.1 permits a district court to "depart from an otherwise applicable Guidelines range if the evidence demonstrates, by a preponderance, that the

-4-

defendant's conduct resulted in death." Mousseau, 517 F.3d at 1049. The autopsy "revealed the cause of [Gunderson's] death was due to heroin toxicity" and that cocaine was also in Gunderson's system. The only drugs found in the apartment where Gunderson overdosed were left over from the packages Nossan admittedly sent. Considering this evidence, the district court did not clearly err in finding the heroin Nossan mailed caused Gunderson's death.

We next consider the reasonableness of the district court's decision to depart upward to a 60-month sentence. Section 5K2.1 instructs:

> Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction . . . already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

Nossan contends her "state of mind and the absence of planning," as well as "Gunderson's own drug use history and his voluntary involvement in this incident strongly mitigate against a section 5K2.1 upward departure." Further, Nossan argues, "It is beyond dispute that Nossan did not intend or knowingly risk Gunderson's death." Nossan maintains these factors "do[] not support the upward adjustment to 60 months given to Nossan by the district court."

District courts considering an upward departure "should consider the dangerousness of the defendant's conduct and the extent to which death or serious injury was an intended result or known risk." Mousseau, 517 F.3d at 1049; see United States v. Merrival, 176 F.3d 1079, 1081-82 (8th Cir. 1999) (citing § 5K2.1 and affirming an upward departure from a Guidelines sentence for involuntary manslaughter when the defendant's "extremely dangerous"conduct in consuming large amounts of alcohol before operating a vehicle and then driving in excess of the speed limit caused two deaths). By twice sending heroin and cocaine to Gunderson, Nossan engaged in dangerous activities, disregarding the grave risks accompanying the use of the drugs. See Mousseau, 517 F.3d at 1049 (affirming a § 5K2.1 departure where the defendant recklessly gave "an unknown substance, suspected to be a narcotic, to a minor to ingest"); United States v. Sweger, 413 F. App'x. 451, 456 (3d Cir. 2011) (affirming a § 5K2.1 departure when the fetanyl-laced heroin sold by the defendant was at least a contributing cause of his customer's death and it was not necessary to show the drug was the proximate cause).

Although Nossan did not intend Gunderson's death, and her addiction and co-dependent relationship with Gunderson likely influenced her conduct, these circumstances are only mitigating factors to be considered in deciding whether and to what extent to depart upward. Such factors do not make Nossan ineligible for such a departure. See United States v. Diaz, 285 F.3d 92, 101 (1st Cir. 2002) ("We see no basis for foreclosing departure under § 5K2.1 when a defendant puts into motion a chain of events that risks serious injury or death, even when an intent to harm is entirely absent and the defendant was not directly responsible for the death."); United States v. Ihegworo, 959 F.2d 26, 29 (5th Cir. 1992) (rejecting an argument that the defendant's "conduct must meet all the section 5K2.1 factors before a court may use the section as a basis for an upward departure"). The district court gave due consideration to these mitigating circumstances in finding a sentence of 60 months was appropriate, as opposed to a longer sentence.

We also note Nossan was potentially subject to either a 20-year mandatory minimum sentence, see § 841(b)(1)(C) ("[I]f death or serious bodily injury results from the use of such substance [such person] shall be sentenced to a term of imprisonment of not less than 20 years or more than life."); see also § 841(b)(1)(A); United States v. Krieger, 628 F.3d 857, 867 (7th Cir. 2010), petition for cert. filed, __ U.S.L.W. __ (U.S. May 6, 2011) (No. 10-10392, 10A838) (explaining, once the district court found by a preponderance of the evidence that the prescription fentanyl patch the defendant gave to her friend caused the friend's death, "the [sentencing] court was obliged to impose the [20-year] mandatory minimum sentence"), or a significantly higher advisory Guidelines range sentence of 235 to 293 months, see U.S.S.G. § 2D1.1(a)(2) (providing that a defendant convicted under 21 U.S.C. § 841(b)(1)(A) is subject to a base offense level of 38 if "the offense of conviction establishes that death . . . resulted from the use of the substance"), because Nossan's distribution of heroin resulted in death. Neither the mandatory minimum nor the applicability of § 2D1.1(a)(2) is at issue here , see Greenlaw v. United States, 554 U.S. 237, 240 (2008), but they are instructive in demonstrating Nossan's 5-year sentence was not substantively unreasonable. Cf. United States v. Kane, 639 F.3d 1121, 1137 n.11 (8th Cir. 2011) ("While this mandatory minimum [sentence] does not apply to [the defendant], it demonstrates the unreasonableness of the district court's sentence.").

We conclude the district court did not abuse its discretion and the sentence imposed was not substantively unreasonable.

## B. Restitution

We next consider Nossan's challenge to the restitution award. "Because [Nossan] challenges only the applicability of [18 U.S.C. § 3663], not the amount of restitution, we review the order of restitution de novo." Mousseau, 517 F.3d at 1048. Under § 3663, a district court may order restitution to a victim of an offense, "or if the victim is deceased, to the victim's estate," when imposing a sentence for conviction

under 21 U.S.C. § 841, unless the person was a participant in the offense. See 18 U.S.C. § 3663(a)(1)(A).

Nossan argues "Gunderson, by repeatedly asking for and accepting drugs from Nossan and then voluntarily using it [sic], was a participant in the transaction and guilty of a controlled substance offense himself." Nossan contends Gunderson, as a purported participant, did not qualify as a victim and restitution to his estate was not permitted under the statute. We disagree.

As we have explained, "[t]he statutory exclusion of offense participants from restitution orders is not broadly applicable." Mousseau, 517 F.3d at 1048. Though Gunderson may have been guilty of other crimes, e.g., drug possession, he did not commit the offense of distributing a controlled substance. He was therefore not a participant in the offense at issue and his estate was eligible for restitution. See id. ("For this prohibition to apply, the defendant must be convicted of one of the offenses enumerated in the statute, and the person to whom restitution is due must have committed the same offense.").

Section 3663(a)(1)(A) also expressly authorizes "restitution *to any victim* of such offense" (emphasis added). A victim "means a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2). The district court did not focus on the potential victims in Gunderson's family who purportedly paid the costs of Gunderson's funeral and burial, and who requested the restitution. We focus on the issues addressed by the district court.

We affirm the district court's restitution order.

## III.   CONCLUSION

We affirm the judgment of the district court.

BYE, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's decision affirming the district court's restitution order. While I further support affirming the district court's application of an upward departure under United States Sentencing Guidelines (U.S.S.G.) § 5K2.1, I do not believe the extent of the departure was reasonable in light of our relevant case law and Renee Nossan's relatively limited involvement in the tragic events underlying this case. I therefore respectfully dissent.

I

"We review the substantive reasonableness of a sentence under an abuse-of-discretion standard." Ferguson v. United States, 623 F.3d 627, 631 (8th Cir. 2010). Under U.S.S.G. § 5K2.1, a district court is authorized to depart from the Guidelines range "if the evidence demonstrates, by a preponderance, that the defendant's conduct resulted in death." United States v. Mousseau, 517 F.3d 1044, 1049 (8th Cir. 2008) (citing U.S.S.G. § 5K2.1). When imposing a departure under § 5K2.1, the court is directed to consider, among other factors, "the dangerousness of the defendant's conduct and the extent to which death or serious injury was an intended result or known risk." Id. (citing U.S.S.G. § 5K2.1).

The district court here departed upward under § 5K2.1 from a Guidelines range of 10 to 16 months to a sentence of 60 months. The court's discussion in fashioning the 44-month upward departure proceeded, in its entirety, as follows:

> In determining the level of upward departure, I am thinking of the other two cases in South Dakota, Olguin and Mousseau. In those instances, the Court upward departed to 10 years or a sentence of 10 years was imposed. I think that your case is different from theirs. In yours, you had a long-term relationship with Andrew and it was a relationship where there were co-dependency issues and both of you had an addiction. That relationship

did not exist in the other two cases. Because there were two instances of you sending him drugs through the mail, one where you used his previous girlfriend's name on the package, which to me shows a level of planning and knowledge, I find that a sentence of 60 months is what is appropriate. It's less than the 10 years that was imposed in the other two cases, but it still recognizes your degree of involvement and the fact there were two packages that were sent on two different occasions.

Sent. Tr. at 57. The majority's analysis largely parallels the district court's reasoning, as it centers on Nossan's dangerous conduct in twice sending heroin and cocaine to Gunderson, while acknowledging the mitigating circumstances presented by Nossan's lack of intent, addiction, and co-dependent relationship with Gunderson.

I agree Nossan's case involves far less egregious facts than Mousseau. In Mousseau, the defendant offered methamphetamine to two minors who had not even requested any drugs. 517 F.3d at 1046. Immediately after smoking the drug, one of the minors became seriously ill and died the following day. Id. In contrast, Gunderson was an adult and an experienced drug user who had repeatedly requested his long-term girlfriend Nossan to mail him the drugs he had purchased. At the sentencing hearing, a professional mental health counselor testified Nossan was chemically dependent and maintained a co-dependent personality characterized by "a neurotic need for love and approval from [Gunderson]," Sent. Tr. at 23, and "very poor decision-making." Id. at 34. Both the district court and the majority recognized these mitigating facts.

Despite distinguishing Mousseau factually, the district court imposed a 44-month upward departure, reasoning Nossan's 60-month sentence was "less than the 10 years that was imposed in [Mousseau], but it still recognizes [Nossan's] degree of involvement and the fact there were two packages that were sent on two different occasions." Id. at 57. I have significant reservations with the district court's perfunctory reliance on the 120-month sentence in Mousseau in determining the extent

-10-

of Nossan's departure.[2]  Namely, the court only focused on the ultimate sentence of 120 months in Mousseau – it did not account for the fact that the defendant's Guidelines range in Mousseau was 70 to 87 months.  As shown above, the court's comments at sentencing reflected its belief it was cutting Nossan a break by not sentencing her as severe as the defendant in Mousseau because of the mitigating circumstances in Nossan's case.  However, the court was actually imposing a much more drastic departure of 275 percent above the high end of the Guidelines range, compared with only a 38 percent upward departure in Mousseau, despite Mousseau's more egregious facts.

I am mindful we do not employ a "rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."  Gall v. United States, 552 U.S. 38, 47 (2007).  Indeed, the Supreme Court in Gall warned "that when applying a mathematical approach, 'deviations from the Guidelines range will always appear more extreme – in percentage terms – when the range itself is low.'"  Ferguson, 623 F.3d at 631 (quoting Gall, 552 U.S. at 47-48).  Nevertheless, the Supreme Court in Gall "expressly permitted appellate courts to 'consider the extent of the deviation' from the Guidelines."  United States v. Feemster, 572 F.3d 455, 462 (8th Cir. 2009) (en banc) (quoting Gall, 552 U.S. at 50).  By failing to consider the extent of the deviation from the Guidelines, I believe the district court made a mistake.  See United States v. Kane, 639 F.3d 1121, 1135 (8th Cir. 2011) ("'In sentencing, as in other areas, district judges at times make mistakes that are substantive.  At times, they will impose sentences that are unreasonable.  Circuit courts exist to correct such mistakes when they occur.'") (quoting Rita v. United States, 551 U.S. 338, 354 (2007)).  Specifically, even in the absence of a percentage-based comparison, the absolute terms contradict the court's intent to sentence Nossan more favorably than the defendant in Mousseau, as the court

---

[2]The district court's reliance on United States v. Olguin, 428 F.3d 727 (8th Cir. 2005), where a defendant similarly received a 120-month sentence, is unavailing because the case did not involve a departure under § 5K2.1.

imposed a 44-month upward departure, compared with only a 33-month upward departure in <u>Mousseau</u>, notwithstanding less egregious facts here.

Finally, even if the court's abuse of discretion does not necessarily follow from its flawed analogy to <u>Mousseau</u>, I am persuaded by another case decided by this court, <u>United States v. Merrival</u>, 176 F.3d 1079 (8th Cir. 1999).  Like <u>Mousseau</u>, <u>Merrival</u> involved more egregious facts than the present matter; the defendant pleaded guilty to involuntary manslaughter after his drunk driving and speeding killed a mother and her five-month-old child and critically injured three others.  176 F.3d at 1080.  On appeal, we discussed the "extremely dangerous" nature of the defendant's conduct in consuming alcohol for 20 hours, operating a vehicle with a blood alcohol content of .234, and speeding.  <u>Id.</u> at 1080-82.  Based on these facts, we upheld an upward departure under § 5K2.1 because of the multiple deaths involved, as well as an upward departure under § 5K2.2 because of the serious bodily injuries suffered by three other individuals.  <u>Id.</u> at 1082.  Accordingly, we affirmed the departure from the Guidelines range of 15 to 21 months to a sentence of 70 months.  <u>Id.</u> at 1081-82.  However, in affirming the district court's sentence, the panel made a "special note . . . that in imposing a departure of this magnitude, the district court acted at the outermost limits of its discretionary authority."  <u>Id.</u> at 1082.

I find <u>Merrival</u>'s "special note" persuasive here.  Similar to <u>Mousseau</u>, Nossan received a more severe departure than the defendant in <u>Merrival</u> – 275 percent compared to 233 percent.  Even in absolute terms, Nossan and the defendant in <u>Merrival</u> received comparable departures of 44 and 49 months, respectively.  Despite the similar departures, <u>Merrival</u> involved far more egregious facts than this case, because even if it is debatable that Nossan's conduct in mailing drugs was comparable to the "extremely dangerous" conduct in <u>Merrival</u> discussed above, the fact multiple deaths and injuries were involved in <u>Merrival</u> alone distinguishes Nossan's case.  It follows that if the departure in <u>Merrival</u> represented the "outermost limits" of the district court's discretionary authority, then a more severe, or even an equivalent,

-12-

departure in this case based on less egregious facts certainly exceeds the outermost limits.

In sum, while Gunderson's death due to his use of narcotics is surely tragic, I do not believe the 44-month upward departure imposed by the district court is reasonable in light of the stark contrast between our relevant case law and Nossan's limited involvement in this case. Therefore, I would vacate the district court's sentence and remand for resentencing.

———————————————