# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1728

_____

United States of America,

*Plaintiff - Appellee,*

v.

David Bollinger,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2018
Filed: July 2, 2018

_____

Before COLLOTON, BENTON, and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

David Bollinger distributed heroin to his friend Mitchell Stenger, and Stenger died from acute heroin intoxication. After Bollinger pleaded guilty to one count of distributing heroin, the district court[1] departed upward under the advisory guidelines

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, now retired.

and sentenced him to 130 months' imprisonment. Bollinger argues on appeal that the district court abused its discretion by imposing such a long prison term. We conclude that the sentence was within the range of discretion available to the sentencing court, and we therefore affirm.

I.

In the early morning hours of December 4, 2014, Mitchell Stenger died from acute heroin intoxication at his parents' home. Based on information obtained from Stenger's telephone, police confronted Bollinger, and he admitted to providing Stenger with the heroin that killed him.

Bollinger explained that Stenger sent him a text message the day before asking for heroin. Bollinger initially declined, but then changed his mind and obtained three capsules of heroin from his supplier for Stenger. Bollinger arrived at the Stenger residence around 10:30 p.m. on December 3.

Bollinger knew that Stenger had been a heroin user, and Stenger had informed Bollinger that Stenger was receiving monthly injections of Vivitrol to assist with his addiction. Vivitrol is a long-acting drug designed to block opiate absorption by the brain and to prevent heroin users from feeling the effects of heroin. Bollinger also knew that heroin users taking Vivitrol are susceptible to overdose because they have an incentive to consume more heroin than usual to overcome the Vivitrol blockade. Bollinger explained that Stenger himself had increased his heroin usage from one or two capsules to as many as four or five when taking Vivitrol.

On December 3, because Stenger's asthma was "acting up," Stenger did not walk down the driveway to meet Bollinger. Instead, Bollinger met Stenger in the garage to give him the heroin. Before parting ways, Bollinger told Stenger to "be

careful." Stenger used heroin some time before 4:00 a.m. on December 4. He was pronounced dead at 4:47 a.m.

Bollinger pleaded guilty to distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). Based on his offense level and criminal history category under the sentencing guidelines, Bollinger's advisory sentencing range was six to twelve months' imprisonment. The government, however, moved for an upward departure under USSG § 5K2.1 on the ground that Bollinger's conduct caused Stenger's death. Bollinger conceded that an upward departure was warranted and requested a prison term between 60 and 65 months.

The district court held a lengthy hearing at which it considered Bollinger's admissions and testimony from a physician and medical toxicologist. This expert, Dr. Hail, described the effects of asthma and the interaction between Vivitrol and heroin. The district court found that Bollinger's conduct caused Stenger's death, that the advisory guideline range did not adequately reflect the seriousness of his offense, and that an upward departure under USSG § 5K2.1 was warranted. In determining the extent of the departure, the court explained that Bollinger and Stenger were not strangers, that Bollinger knew Stenger was taking Vivitrol, and that Bollinger knew Stenger "was physically vulnerable to the possibility of an overdose because of the Vivitrol and possibly because of his asthmatic condition." The court imposed a sentence of 130 months.

II.

USSG § 5K2.1 permits a sentencing court to depart from the guideline range if the defendant's conduct resulted in death. In determining the extent of a departure a court should consider: (1) "the defendant's state of mind," (2) "the degree of planning or preparation," (3) "whether multiple deaths resulted," (4) "the means by which life was taken," (5) "the dangerousness of the defendant's conduct," (6) "the

extent to which death or serious bodily injury was intended or knowingly risked," and (7) "the extent to which the offense level for the offense of conviction . . . already reflects the risk of personal injury." USSG § 5K2.1.

We review the extent of a departure for abuse of discretion. *United States v. Nossan*, 647 F.3d 822, 825 (8th Cir. 2011). A court abuses its discretion when it "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Boss*, 493 F.3d 986, 987 (8th Cir. 2007).

Bollinger complains that the court gave too much weight to Bollinger's knowledge of Stenger's asthma condition when assessing the extent to which Bollinger knowingly risked Stenger's death. He contends that the government's expert, Dr. Hail, testified that Stenger's asthma did not contribute to the death, so the condition was an irrelevant factor. We think Bollinger overstates both Dr. Hail's testimony and the district court's emphasis on Stenger's asthma. Dr. Hail explained that "asthma causes respiratory distress, whereas heroin causes respiratory depression," and acknowledged that it was not possible "for somebody to just fall asleep and die from an asthma attack." But while Dr. Hail testified that the cause of death was "acute heroin intoxication," she never expressed an opinion about whether Stenger's asthma contributed to his death or to the risk of death. More important, the district court relied principally on the fact that Stenger was "physically vulnerable to the possibility of an overdose *because of the Vivitrol*" and only "possibly" because of his asthmatic condition. The record thus does not show that the court gave "significant weight" to an "irrelevant factor."

Bollinger next argues that the district court gave too much weight to Stenger's Vivitrol usage, because the evidence did not show that Bollinger had personal knowledge about how frequently or how recently Stenger received injections. The

interviewing officer did acknowledge that Bollinger was not present to see the shots of Vivitrol administered to Stenger. But the district court reasonably explained that Bollinger had sufficient awareness to establish that he knowingly risked Stenger's death. Bollinger knew about the general risk of heroin overdose for any user, and he also knew from Stenger that he received monthly Vivitrol injections, that Stenger used more heroin than normal to overcome the effects of Vivitrol, and that people taking Vivitrol are susceptible to heroin overdose. Bollinger's advice to Stenger after delivering the heroin—that he should "be careful"—supported an inference that Bollinger knew of the risks. The court thus did not abuse its discretion by giving weight to Bollinger's knowledge of Stenger's Vivitrol usage.

Bollinger also contends that the court erred by treating his friendship with Stenger as an aggravating factor. We understand his intuitive reaction that a friend who genuinely regrets Stenger's death should not be treated more harshly than an anonymous street dealer who could not care less about the fate of his customer. But the district court reasonably relied on the fact that Bollinger, by virtue of his friendship with Stenger, had particular knowledge of Stenger's vulnerability and thus more culpability under the criteria for a departure under § 5K2.1. A friend might well have refused to furnish Stenger with a dangerous controlled substance, and if Stenger could not get heroin from his friend, then perhaps his death would have been avoided if another source was not readily available. It was not an abuse of discretion for the court to account for this circumstance.

Finally, Bollinger argues that the district court failed to give adequate weight to the sentences imposed by other judges in other districts for similar offenses. Under 18 U.S.C. § 3553(a), a district court should consider the need to avoid sentencing disparities among similarly-situated defendants. The sentencing practices of one district court, however, "are not a reference point for other courts." *United States v. Soliz*, 857 F.3d 781, 783 (8th Cir. 2017). Bollinger's argument that other defendants "received shorter sentences for comparable offenses is at base a disagreement with

the weighing of the § 3553(a) factors" and "does not demonstrate an abuse of discretion." *Id.* By carefully analyzing whether a departure was warranted under the guidelines on the ground that Bollinger was an atypical offender, the district court necessarily considered the need to avoid unwarranted disparities. *See Gall v. United States*, 552 U.S. 38, 54 (2007).

Bollinger's 130-month sentence is within the range of reasonableness for a drug offense resulting in death. As the district court explained, if Bollinger had pleaded guilty to an offense that had as an element that his distribution of heroin resulted in death, then he would have faced a 20-year mandatory minimum sentence. *See* 21 U.S.C. § 841(b)(1)(C). Although that provision is not directly applicable, it is "instructive" in demonstrating that Bollinger's sentence was not substantively unreasonable. *Nossan*, 647 F.3d at 827.

The judgment of the district court is affirmed.

_____