# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2459

_____

United States of America,           *
           *

         Appellee,        *
           *   Appeal from the United States
    v.               *   District Court for the
           *   Northern District of Iowa.

Nickolas Scott Pratt,       *
           *

         Appellant.      *

_____

Submitted: December 9, 2008
Filed: January 29, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Nickolas Scott Pratt (Pratt) pled guilty on January 15, 2008, to one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine mixture within 1,000 feet of a protected location and to distribute a controlled substance to a person under the age of 21, following a previous felony drug conviction in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 851, 859(a), and 860(a). The district court[1] sentenced Pratt to 240 months imprisonment

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

and ten years supervised release.  Pratt appeals, claiming the district court erred in enhancing Pratt's sentence under 21 U.S.C. § 851.  We affirm.

## I.     BACKGROUND

On February 24, 2005, Pratt was indicted by a federal grand jury for conspiracy to distribute and possess methamphetamine following a previous felony drug conviction.  The indictment alleged Pratt was involved in a conspiracy "[b]etween about June 4, 1998, and continuing through about February, 2003."  On June 29, 2005, Pratt pled guilty pursuant to a plea agreement.  Pratt later received permission from the district court to withdraw his guilty plea so Pratt could challenge any attempt by the government to seek an enhanced sentence.  Pratt did not dispute his involvement in the conspiracy.  Instead, Pratt argued the government could not prove Pratt committed any act in furtherance of the conspiracy after Pratt's previous state court felony drug conviction was finalized on April 22, 2002.  Pratt resolved there was no "prior" felony drug conviction the government could rely on to seek an enhanced sentence.

On December 6, 2007, the government filed an information for an enhanced penalty due to Pratt's prior felony drug conviction.  On January 15, 2008, Pratt again pled guilty to the one count indictment, but Pratt objected to the government's information for an enhanced penalty, contending he did not engage in overt acts in furtherance of the conspiracy after his prior felony drug conviction was finalized on April 22, 2002.

The district court held a contested sentencing hearing on April 15, 2008.  In an effort to prove Pratt actively participated in the conspiracy after April 22, 2002, the government offered three exhibits consisting of (1) Pratt's previous plea agreement, (2) a certified copy of Pratt's prior felony drug conviction, and (3) a transcript of the hearing in which Pratt pled guilty to the one count indictment alleging Pratt was involved in the conspiracy through February 2003.

The government also presented the testimony of Lieutenant Randall Kramer (Lieutenant Kramer), an investigator with the O'Brien County, Iowa, Sheriff's Office who had been involved in investigations of narcotic crimes for 31 years, more intensely in the last fifteen years. Lieutenant Kramer also testified he was investigating Pratt's involvement in a conspiracy with "a number of different individuals in the Hartley, Spencer area." Lieutenant Kramer described the investigation as focused primarily on the use, distribution, and manufacture of methamphetamine within the conspiracy. Lieutenant Kramer listed the names of all the parties he knew were involved in the conspiracy, and explained, "[t]he basic objectives [of the conspiracy] were to obtain and then distribute illegal drugs and then share and use these illegal drugs with each other and persons outside the conspiracy." Lieutenant Kramer stated his testimony was based on personal knowledge, interviews he conducted with other investigators, and reports written by other investigators. When discussing Pratt's involvement in the conspiracy after April 22, 2002, Lieutenant Kramer explained he obtained most of his information from debriefings and interviews he held with Pratt and his co-conspirators. Lieutenant Kramer related the following:

1. Sarah Graves (Graves) informed Lieutenant Kramer she received methamphetamine from Pratt on three or four occasions from January 1, 2002, through May 2002. Graves was a juvenile during this time, and she used drugs with Pratt and his co-conspirators at the home of Doug Nielson (Nielson).

2. During the late summer of 2002, Jason Persons (Persons) told Lieutenant Kramer that Persons sold Pratt one-quarter ounce of methamphetamine for $200 every other day for one month, totaling at least fifteen sales.

3. Brandon Tyson (Tyson) was arrested with one-eighth of an ounce of methamphetamine on September 13, 2002. Tyson advised Lieutenant Kramer he received the methamphetamine from Pratt and it "was bad meth."

-3-

4.   Jason Marlow (Marlow) apprized Lieutenant Kramer that Pratt had a source of methamphetamine in Hartley, Iowa, and from October 2002 until January 2003, Pratt traveled to Hartley to obtain methamphetamine. Marlow stated he was aware of two occasions during which Pratt traveled to Hartley and returned with one-eighth of an ounce of methamphetamine.

5.   On September 13, 2003, Nielson was arrested in Kansas City, Missouri, after purchasing pseudoephedrine pills for the manufacture of methamphetamine. Officers searched Nielson's home and located a laboratory used to manufacture methamphetamine. Officers determined Pratt lived in the residence and distributed methamphetamine from the residence between August 2001and January 2002.

6.   Jay Christensen (Christensen) reported to Lieutenant Kramer that Christensen used methamphetamine with Pratt at Christensen's home in Hartley, Iowa, from November 2002 until December 2002. On one occasion Christensen gave Pratt $100 to purchase marijuana for Christensen, but Pratt never returned with the marijuana or the money.

7.   Travis Rouse (Rouse), who was interviewed by law enforcement officers other than Lieutenant Kramer, briefed officers that on November 17, 2002, he was traveling with Pratt to Hartley, Iowa. When Rouse and Pratt arrived, they went to Nielson's home. Rouse gave Pratt $20 to purchase methamphetamine from Nielson. Pratt entered the home and returned with one-half to three-quarters of a gram of methamphetamine. Pratt and Rouse then used the methamphetamine and drove to Sanborn, Iowa. In Sanborn, the vehicle was stopped, and Rouse was arrested for not having a driver's licence. Lieutenant Kramer learned of these events by reading the relevant police reports, and verifying Rouse's arrest with the court.

When Lieutenant Kramer, the government's only witness, finished testifying, Pratt's counsel called one defense witness, Martin J. Koch (Koch), Pratt's former probation officer. Koch testified that as a condition of Pratt's probation, Pratt occasionally had to complete urinalysis testing. Koch reported Pratt tested positive for (1) unspecified drugs in June or August of 2002; (2) marijuana and methamphetamine in September 2002; (3) marijuana when entering a residential treatment facility in December 2002; and (4) unspecified drugs in January of 2003.

On June 17, 2008, during Pratt's second sentencing hearing, the district court found, although most of Lieutenant Kramer's testimony was based on hearsay, the testimony had sufficient indicia of reliability to support its probable accuracy. The district court then found the government met its burden of proving beyond a reasonable doubt Pratt engaged in overt acts in furtherance of the conspiracy after the date of his previous felony drug conviction. As a result, the district court imposed an enhanced sentence as required under 21 U.S.C. § 851. Pratt now appeals.

## II.    DISCUSSION

### A.    Standard of Review

When the defendant files a timely objection to the prior conviction enhancement, "[w]e review the district court's factual findings on the issue [of whether the government has met its burden of proof for a § 851 sentence enhancement] for clear error."[2] United States v. Sanchez-Garcia, 461 F.3d 939, 947 (8th Cir. 2006) (citation omitted).

---

[2]Pratt urges us to apply a de novo standard of review to his claim. We review de novo a "district court's decision on felony drug conviction enhancements" when that decision is based on "statutory interpretation." United States v. Sturdivant, 513 F.3d 795, 803 (8th Cir. 2008) (citation omitted). The sole issue on review in Pratt's case is whether the district court erred in finding the government proved beyond a reasonable doubt Pratt committed an overt act in furtherance of the conspiracy after his April 22, 2002 state court felony drug conviction. This is a factual determination which we review for clear error. See Sanchez-Garcia, 461 F.3d at 947.

## B. Pratt's Sentencing Enhancement

Under 21 U.S.C. § 841(b)(1)(A), when a defendant is found to have committed one of the enumerated drug offenses after having been convicted of a previous felony drug offense, the defendant is subject to a mandatory minimum sentence of 20 years imprisonment. Before a defendant may be subject to such a sentence enhancement, the government must file an information making the defendant aware of its intent to use the prior conviction and seek an enhanced sentence. See 21 U.S.C. § 851(a)(1). If a defendant wishes to challenge the prior conviction, he is entitled to file a written response, at which time "[t]he [district] court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment." 21 U.S.C. §851(c)(1). At this hearing, the government "shall have the burden of proof beyond a reasonable doubt on any issue of fact." Id.

In the present case, the government notified Pratt of the government's intent to rely on Pratt's prior felony drug conviction for a sentence enhancement. Pratt filed a written opposition, and it became the government's burden to prove the existence of the prior conviction and other relevant issues of fact beyond a reasonable doubt. In United States v. Funchess, 422 F.3d 698, 703 (8th Cir. 2005) (citation omitted), this court explained, a "previous conviction is considered 'prior' for purposes of applying a sentencing enhancement . . . where the defendant committed an act in furtherance of a conspiracy after the date a prior conviction was finalized." Thus, if Pratt committed an act in furtherance of the conspiracy after April 22, 2002, the date on which his previous felony drug conviction became final, Pratt's April 22, 2002 conviction will be considered a "prior" conviction requiring an enhanced sentence under § 851.

Pratt argues the district court should not have relied on Lieutenant Kramer's hearsay testimony to find Pratt committed overt acts in furtherance of the conspiracy after April 22, 2002. However, "the sentencing process does not carry the same

evidentiary protections guaranteed during a criminal trial." United States v. Agboola, 417 F.3d 860, 865 (8th Cir. 2005) (quoting Smith v. United States, 206 F.3d 812, 813 (8th Cir. 2000) (per curiam)). In general, "[t]he rules of evidence do not apply at sentencing." United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005) (citing United States v. Jones, 195 F.3d 379, 385 (8th Cir. 1999)). "[T]his is not to say that there are no constitutional limitations on the use of hearsay evidence at such proceedings. A defendant may not be sentenced on the basis of 'misinformation of constitutional magnitude.'" United States v. Wise, 976 F.2d 393, 402 (8th Cir. 1992) (quoting United States v. Tucker, 404 U.S. 443, 447 (1972)).

"A district court has wide discretion at sentencing as to the kind of information considered or its source." United States v. Atkins, 250 F.3d 1203, 1212 (8th Cir. 2001) (citing United States v. Johnson, 767 F.2d 1259, 1276 (8th Cir. 1985)). "In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy*." U.S.S.G. § 6A1.3(a) (emphasis added); see also Wise, 976 F.2d at 402. The relevant information a "court may consider [includes] criminal activity for which the defendant has not been prosecuted and 'uncorroborated hearsay, provided the [defendant is] given a chance to rebut or explain it.'" Atkins, 250 F.3d at 1213 (quoting Johnson, 767 F.2d at 1276); see also United States v. Shackelford, 462 F.3d 794, 796 (8th Cir. 2006) ("Hearsay evidence, even double hearsay, can be used at sentencing proceedings if it bears 'sufficient indicia of reliability to support its probable accuracy.'" (quoting Wise, 976 F.2d at 402)). "The determination of whether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case, and is committed to the sound discretion of the district court." United States v. Cassidy, 6 F.3d 554, 557 (8th Cir. 1993) (internal citations omitted).

Pratt complains the hearsay testimony relayed by Lieutenant Kramer is not sufficiently reliable to support Pratt's enhanced sentence. Lieutenant Kramer related how he personally interviewed five of Pratt's co-conspirators and reviewed other officers' reports from an interview conducted with a sixth co-conspirator. Using these interviews as his basis of knowledge, Lieutenant Kramer testified that three of Pratt's co-conspirators indicated they purchased methamphetamine from Pratt after April 22, 2002; another one of Pratt's co-conspirators confessed to selling methamphetamine to Pratt through the summer of 2002; still another co-conspirator acknowledged regularly using methamphetamine with Pratt until December 2002; and a co-conspirator told Lieutenant Kramer that Pratt obtained methamphetamine from a source in Hartley, Iowa, until January 2003. Lieutenant Kramer's hearsay testimony was corroborated by Pratt's witness, his former probation officer, Koch, who testified Pratt had positive drug tests in August 2002, September 2002 (which included methamphetamine), December 2002, and January 2003. Koch also opined that, in his experience, methamphetamine is generally only detectible with a urinalysis drug test for 24 to 48 hours. Pratt's evidence corroborates Lieutenant Kramer's hearsay evidence because Koch's testimony as to the dates Pratt tested positive for drug use corresponds with the dates Pratt's co-conspirators reported they used methamphetamine with Pratt.

In Wise, 976 F.2d at 403-04, this court considered the reliability of hearsay statements made by a probation officer in a sentencing hearing. Wise's probation officer related self-incriminatory statements made by two individuals who were involved in the same offense with which Wise was charged. Id. This court determined the self-incriminatory statements made by other individuals involved in the offense "fell within the definition of a statement against penal interest excepted from the exclusions of the hearsay rule by Federal Rule of Evidence 804(b)(3) ([putting] aside that Rule's precondition of the witness's unavailability.)" Id. As a result, our court concluded the officer's hearsay testimony was sufficiently reliable to support the district court's findings and Wise's resulting sentence enhancement. Id.;

<u>see</u> <u>also</u> <u>Shackelford</u>, 462 F.3d at 796 (deciding hearsay statements relayed at a sentencing hearing were statements against penal interest, and "[t]he fact that the . . . statements qualified for at least one exception from the hearsay rule renders them more reliable than they otherwise would have been").

"[A] sentence based on hearsay will be sustained if the testimony is reliable enough." <u>United States v. Tucker</u>, 286 F.3d 505, 510 (8th Cir. 2002) (citing U.S.S.G. § 6A1.3(a) (2000)). The hearsay statements relayed by Lieutenant Kramer at Pratt's sentencing hearing were sufficiently reliable. The district court did not clearly err when it found, beyond a reasonable doubt, Pratt committed acts in furtherance of the conspiracy after April 22, 2002.

## III. CONCLUSION

We affirm the judgment of the district court.

_____