# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1327

_____

United States of America

*Plaintiff - Appellee*

v.

William J. Sheridan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 17, 2016
Filed: June 13, 2017

_____

Before RILEY,[1] Chief Judge, WOLLMAN and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

William Sheridan pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and the district court[2] sentenced him to 108 months imprisonment. Sheridan appeals, arguing the district court committed procedural error and violated his constitutional rights by relying on hearsay testimony introduced at his sentencing hearing which did not possess sufficient indicia of reliability. Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.      BACKGROUND

On June 18, 2014, Kansas City, Missouri, police officers responded to a call reporting a sexual assault. T.S., Sheridan's then-18-year-old daughter, told officers her father had sexually assaulted her the previous evening. T.S. reported to the officers that her father kept two shotguns and a pistol in his bedroom.

Officers obtained a search warrant for Sheridan's residence. In an open vertical safe in Sheridan's bedroom, officers found two shotguns, three empty gun magazines, two empty handgun holsters, a revolver speed loader, a gun cleaning kit, and 687 live rounds of ammunition. In a black pouch under a dresser next to Sheridan's bed, police found a chrome-colored .25-caliber semi-automatic pistol, which was loaded with six rounds of ammunition. Officers ran a criminal history check on Sheridan and discovered he was a convicted felon. Sheridan was arrested. In a subsequent interview with law enforcement, Sheridan admitted all of the firearms and ammunition were his and provided a description of handling the semi-automatic pistol.

A federal grand jury indicted Sheridan on three counts of being a felon in possession of a firearm. On July 8, 2015, Sheridan entered into a plea agreement,

---

[2]The Honorable David Gregory Kays, Chief Judge, United States District Court for the Western District of Missouri.

pleading guilty to one count of being a felon in possession of a firearm and reserving his right to appeal the application of a cross-reference under the United States Sentencing Guidelines (U.S.S.G. or Guidelines).[3]

Guidelines § 2K2.1(c)(1) states "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense . . . apply—(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." Based on T.S.'s allegation that Sheridan had sexually assaulted her, the presentence investigation report (PSR) applied a cross-reference to U.S.S.G. § 2A3.1 "Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse." Pursuant to § 2A3.1(a)(2), Sheridan's base offense level was 30. The PSR also applied a four-level enhancement for causing the victim to engage in sexual acts by threatening or placing the victim in a state of fear, a two-level enhancement because T.S. was under Sheridan's care, and a three-level reduction for Sheridan's acceptance of responsibility—resulting in a total offense level of 33. See U.S.S.G. §§ 2A3.1(b)(1), (3), 3E1.1(a), (b). With a criminal history category of II, Sheridan's calculated advisory Guidelines imprisonment range was 151 to 188 months imprisonment, but because that exceeded the statutorily authorized maximum sentence, the advisory Guidelines sentence was 120 months. See 18 U.S.C. § 924(a)(2); U.S.S.G. § 5G1.1(a).

Sheridan contested the PSR's factual findings alleging Sheridan sexually abused or threatened T.S. and filed an unopposed motion to continue his sentencing date in anticipation of the government introducing DNA testimony in support of the cross-reference. At Sheridan's sentencing hearing on January 25, 2016, the

[3]Although the government asserts Sheridan's appeal technically is not covered by the plea agreement's exception, it has agreed to waive any reliance on that argument.

government called four witnesses involved in Sheridan's investigation. T.S. did not testify, and the government did not address whether T.S. was unavailable. Sheridan's counsel objected to the first government witness, arguing the expected hearsay testimony violated Sheridan's limited due-process rights and deprived him of the opportunity to confront his accuser. The district court overruled Sheridan's objection, and Detective Clint French of the Kansas City police department's internal affairs division proceeded to testify.

Following T.S.'s 911 call on June 18, Detective French met T.S. in the emergency room of the hospital where T.S. was undergoing a sexual-assault examination. Detective French testified T.S. told him that around 10:30 p.m. the night before, Sheridan summoned T.S. to his bedroom and told her he wanted her to "rub something." Detective French stated T.S. said that "usually mean[t] sexual acts are going to . . . happen after that." T.S. then went to Sheridan's bedroom, removed her clothing when Sheridan told her to do so, and then began to perform oral sex on Sheridan. Sheridan forcibly attempted to penetrate T.S. anally but did not succeed. T.S. told Detective French that Sheridan kept a "small silver pistol" in his bedroom and she was afraid Sheridan would shoot her with it if she did not perform those acts. T.S. also told Detective French that Sheridan had threatened to shoot and kill T.S. if T.S. told anyone about the sex acts. Detective French described T.S.'s demeanor during the interview as "upset and obviously emotional."

The government called Detective Erica Oldham next. Over Sheridan's continuing objection to hearsay, the district court permitted Detective Oldham to testify about the interview she conducted with Sheridan's neighbor, Randy Wedlow. Wedlow described to Detective Oldham an incident that had occurred five days before T.S. called the police to report the sexual assault in which Wedlow witnessed Sheridan yell out to T.S. from inside his home, calling her a bitch and telling her "she needed to come inside and fix dinner and do the dishes." On Monday, June 16, a few days after that incident, T.S. "revealed [to Wedlow] that her father had been sexually

-4-

assaulting her . . . since she was about 12 years old" by forcing her to perform oral sex and have sexual intercourse. Wedlow told T.S. he would help her contact the police when she was ready. On June 18, T.S. came to Wedlow and told him the previous evening Sheridan forced her to "rub his feet, perform oral sex, and . . . tried to penetrate her again but was unsuccessful." Wedlow helped T.S. call the police that day.

Andrew Atkinson, forensic specialist for the police department crime laboratory, testified to report the results of a DNA test comparing swabs from T.S.'s tongue, lip, face, and upper thighs to swabs collected from Sheridan. Atkinson did not find any male DNA on the tongue swab, but explained the test of T.S.'s face and lip did show Sheridan was a potential contributor to a minor genetic profile. The likelihood that any random individual would be a match was one in eight. The testing of T.S.'s upper thigh sample showed Sheridan again was a possible contributor, but Atkinson said 57 percent of the population also would be a possible contributor.

Detective James Sola was the government's final witness. Detective Sola testified that as part of the investigation into Sheridan, he interviewed Lucinda Sheridan, who is T.S.'s sister and Sheridan's daughter. Detective Sola stated Lucinda said this "was the first time that she had ever heard of these allegations" against Sheridan, and when Detective Sola asked why T.S. might fabricate these allegations, Lucinda speculated T.S. was not performing tasks at home in the way her father expected. Detective Sola also testified about the report prepared by the patrol officer who responded to the 911 call. Detective Sola testified Lucinda told the patrol officer that T.S. had previously alleged Sheridan had sexually abused her when T.S. was in middle school, but no further action against Sheridan was taken. On cross-examination, Detective Sola testified that the patrol officer's report stated T.S. had alleged that Sheridan had also sexually abused Lucinda since she entered puberty, but Lucinda denied that allegation.

At the close of the hearing, the district court concluded:

> In my mind, this—even though it's hearsay evidence, it is uncontroverted, and I am going to find that the government met their low burden of proof by the preponderance of the evidence. You know, the DNA evidence I think . . . that it wasn't really that helpful because people live in the same houses, not uncommon, and certainly the numbers weren't very meaningful to the Court. But it was consistent with someone having contact, possibly, with the defendant.
>
> So at this time, I am going to overrule your objection. I'm going to find the cross-reference is appropriate based on the evidence I heard by the preponderance of the evidence.

The district court commented, "Even notwithstanding the cross-reference, the fact that someone with [Sheridan's] criminal history had three guns in the house [is] concerning to the Court." "[C]onsider[ing] all the factors under 18 U.S.C. § 3553(a)," the district court varied downward and sentenced Sheridan to 108 months imprisonment to run consecutively with any sentence imposed in a pending state prosecution.

## II.   DISCUSSION

Sheridan appeals, arguing the district court (1) committed procedural error by applying the cross-reference to U.S.S.G. § 2A3.1 and subsequent four- and two-level enhancements; and (2) violated Sheridan's constitutional right to cross-examine his accuser. We examine the district court's application and interpretation of the Guidelines de novo and its findings of fact for clear error. See United States v. Timberlake, 679 F.3d 1008, 1011 (8th Cir. 2012). We begin with the understanding that the Rules of Evidence expressly "do not apply to . . . sentencing" proceedings. Fed. R. Evid. 1101(d)(3). "When a proper objection is made to the district court's consideration of . . . hearsay evidence, we review for abuse of discretion." United States v. Woods, 183 F. App'x 592, 594 (8th Cir. 2006) (per curiam).

Sheridan contends the district court erred by relying on hearsay testimony because it did not possess sufficient indicia of reliability.[4]  In resolving disputed issues of fact during a criminal sentencing, a district court is permitted to rely on relevant hearsay or other evidence "without regard to its admissibility under the rules of evidence applicable at trial," so long as that evidence possesses "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a).  This includes uncorroborated hearsay if the defendant has the opportunity to respond to and rebut the testimony.  See United States v. Pratt, 553 F.3d 1165, 1170 (8th Cir. 2009).

"'The determination of whether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case, and is committed to the sound discretion of the district court.'"  Id. (quoting United States v. Cassidy, 6 F.3d 554, 557 (8th Cir.1993)).  In reviewing the reliability of hearsay and double hearsay evidence, we have considered factors such as the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence.  See, e.g., United States v. Farmer, 567 F.3d 343, 347 (8th Cir. 2009) (agreeing with the district court's finding in a revocation hearing that the sexual assault victim's statement to officers made shortly after the assault was reliable because "the event was fresh in her memory"); United States v. Shackelford, 462 F.3d 794, 796 (8th Cir. 2006) (observing hearsay statements reported at the sentencing hearing were "consistent" and corroborated by the police report); United States v. Wallace, 408 F.3d 1046, 1048 (8th Cir. 2005) (deciding that a 911 call from the victim and the victim's statement and grand jury testimony were sufficiently reliable "for use in sentencing," and noting photographic evidence corroborated those

[4]Sheridan asserts that without the unlawful application of the cross-reference, and assuming the district court would have applied a two-level enhancement for the possession of three firearms, his total offense level would have been 16 and his advisory sentencing Guidelines range would have been 24 to 30 months.  See U.S.S.G. § 2K2.1.

statements); United States v. Knife, 9 F.3d 705, 706 (8th Cir. 1993) (determining the sentencing hearsay statements were "corroborated in part by [the defendant's] later testimony, by medical records, and by the victim's public conduct"). Compare United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995) (concluding sentencing hearsay evidence did not possess sufficient indicia of reliability because (1) no sworn affidavit was prepared; (2) the interview was conducted over the phone, depriving the officer of the opportunity to "observe [the victim's] demeanor"; and (3) there was no other evidence in the record "corroborat[ing] the account given [to] the [PSR] preparing officer") with United States v. Farnsworth, 92 F.3d 1001, 1010 (10th Cir. 1996) (distinguishing Fennell on the grounds that the challenged hearsay statements were not made over the telephone, but were made in person to the investigating officer contemporaneous to arrest).

Because T.S. did not testify at Sheridan's sentencing hearing, the government introduced her allegations of sexual abuse through witnesses involved in the investigation.[5] While we agree with Sheridan's assertion that the evidence against him was not "uncontroverted," as the district court put it, we find no clear abuse of discretion in admission of the hearsay evidence and application of the sentencing enhancement.

The consistent nature and timing of T.S.'s allegations against Sheridan support their reliability. T.S. reported a virtually identical account of the specific sexual assault that occurred the night before she called 911 to her neighbor, Wedlow, the day after the assault had occurred, and to Detective French, who interviewed T.S. as she was receiving a sexual assault examination. The detective was able to observe T.S.'s demeanor, describing that demeanor to the district court.

---

[5]The government did not provide any reason to the district court why T.S. did not testify, and when we inquired at oral argument, the government referenced the pending state prosecution against Sheridan.

Although much of the evidence introduced at the sentencing hearing related to T.S.'s general allegations of Sheridan's sexual assault, the district court also was required to find Sheridan "used or possessed [the] firearm or ammunition cited . . . in connection with" commission of the sexual assault. See U.S.S.G. § 2K2.1(c)(1). There are two statements that support the district court's finding. Detective French testified that T.S. had told him (1) she was afraid Sheridan would shoot her with the small, silver pistol recovered near Sheridan's bed if she did not comply with his sexual demands; and (2) Sheridan had threatened to shoot and kill her if she told anyone about the sex acts. Keeping in mind the broad deference we afford to the district court's factual findings, we do not perceive any clear error in the district court's findings.

Sheridan next contends the district court's reliance on hearsay testimony violated his Sixth Amendment right to confront and cross-examine his accuser. While the Confrontation Clause protects criminal defendants from the "admission of testimonial statements of a witness who did not appear at trial unless [s]he was unavailable to testify," Crawford v. Washington, 541 U.S. 36, 53-54 (2004), we have held "the Confrontation Clause does not apply at sentencing hearings," United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005); accord Wallace, 408 F.3d at 1048, and we are bound by such precedent, see Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam) ("[O]ne panel is bound by the decision of a prior panel."). Sheridan's Sixth Amendment challenge must be dismissed.

## III. CONCLUSION

Finding no clear error or abuse of discretion, we affirm Sheridan's sentence.

_____