United States Court of Appeals
For the Eighth Circuit
No. 21-3130

United States of America

*Plaintiff - Appellee*

v.

Jeff Harris

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 15, 2022
Filed: August 12, 2022
_____

Before LOKEN, KELLY, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

On three occasions in early 2019, Jeff Harris sold capsules of heroin that contained fentanyl to a confidential source in the St. Louis metro area. A superseding indictment charged Harris with conspiracy to distribute heroin and fentanyl between June 2017 and May 2019, possession with intent to distribute heroin, and distribution of fentanyl in August 2019 resulting in death. Harris pleaded guilty to conspiracy to distribute and possess with intent to distribute fentanyl. The government dismissed

the resulting-in-death count, which carried a mandatory minimum 20-year sentence. See 21 U.S.C. § 841(b)(1)(C). At sentencing, adopting the presentence investigation report (PSR) without objection, the district court[1] determined an advisory guidelines sentencing range of 15-21 months' imprisonment, granted the government's motion for an upward departure, and sentenced Harris to 70 months' imprisonment. Harris appeals, arguing the court erred in granting an upward departure based primarily on Harris's role in the August 2019 fentanyl overdose death. We affirm.

In the written plea agreement, the government promised to forgo further federal prosecution of Harris's known fentanyl distribution but stated that the government at sentencing would seek an upward departure and intended to prove Harris's role in causing the August 2019 overdose death. The government reaffirmed its intention at the change of plea hearing and filed a pre-sentencing Motion for Upward Departure pursuant to USSG § 5K2.1 and § 5K2.0.

At the September 2021 sentencing hearing, the government called Aaron Ackland in support of its departure motion. Ackland, an FBI Special Agent with seventeen years' experience, testified that he was familiar with Harris from drug trafficking investigations in early 2019. Ackland was informed by the suburban Maplewood Police Department that it received a 911 call on August 29, 2019 reporting two possible drug overdoses in Maplewood. Police responded. They found D.W. unconscious in the bathroom of his family home and M.H. unconscious in a bedroom. D.W.'s mother said she found the unconscious men at 5:00 a.m. and called 911. D.W. regained consciousness after receiving NARCAN. M.H. was pronounced dead at the scene. Cell phones traced to D.W. and M.H. were found. A post-mortem exam determined M.H. died of "fentanyl, acetyl fentanyl, and methamphetamine intoxication."

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

Agent Ackland testified that D.W. was transported to a local hospital where he was interviewed by a Maplewood officer. D.W. said he purchased the drugs from a person he knew as "J." A consensual search of D.W.'s cell phone showed four calls to a contact labeled "J." on August 28. Ackland testified that D.W. was then interviewed on September 5 at the Maplewood Police Department. D.W. said that after he called "J." at his contact phone number on August 28, "J." arrived in a vehicle. D.W. purchased four capsules of what he believed was heroin for $20. He shared the drugs with M.H. in the residence but did not see M.H. ingest them.

D.W. described "J.' as a "heavyset black male." Agent Ackland testified that he was familiar with Harris's cell phone number. Ackland further testified, "[W]e took physical features that were very similar to Mr. Harris" and prepared a six-photo line-up of "heavier set black males with short dreadlock hair." Asked to circle the picture he believed to be "J," D.W. circled the photo of Harris. The FBI then did a "cell site analysis" of the calls D.W. made to or received from Harris's phone around 9:00 p.m. on August 28, when D.W. said he purchased the fentanyl-laced heroin. The analysis showed "that all three parties were at [D.W.'s] address during the time that [D.W.] described the drug exchange that occurred."

Agent Ackland testified D.W. said at the end of the September 5, 2019 interview that "he was willing to testify on behalf of the United States against the defendant, Jeff Harris." However, D.W. died of another overdose in March 2020. On cross examination, Agent Ackland conceded that because D.W. had also overdosed and was rendered unconscious on August 28, he never witnessed M.H. ingest the drugs D.W. purchased from Harris.

At sentencing, Harris argued the government failed to prove his role in the death of M.H. because it relied solely on the hearsay testimony of an agent who had no firsthand knowledge of the sale, and who got his information from D.W., a person

"who had culpability" and whose veracity could not be verified. The district court granted the government's motion for an upward departure:

> [C]onsidering the testimony of Agent Ackland and all facts known to the Court already through the [PSR], the Court concludes that there is a sufficient basis for an upward departure in these particular instances. A death occurred, the source of the death was narcotics, fentanyl, sold by the defendant to one of those who overdosed.

On appeal, Harris argues "the District Court erred in departing upward pursuant to USSG § 5K2.1 based exclusively on hearsay and speculative testimony, resulting in an unreasonable sentence." "Section 5K2.1 permits a district court to depart from an otherwise applicable Guidelines range if the evidence demonstrates, by a preponderance, that the defendant's conduct resulted in death." United States v. Nossan, 647 F.3d 822, 826 (8th Cir. 2011) (quotation omitted). Harris argues that because "[Agent] Ackland's testimony was predicated on layers of hearsay that he had obtained through the Maplewood Police Department and the Maplewood Police had gotten from others," the district court erred in imposing its upward departure. Even if this argument was preserved for appeal by Harris contesting the government's motion for upward departure, we conclude there was no error and affirm.

Whether M.H.'s death resulted from Harris's conduct is a factual finding we review for clear error. United States v. Mousseau, 517 F.3d 1044, 1049 (8th Cir. 2008). At sentencing, the district court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, including hearsay and double hearsay evidence, provided that the information has "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a); United States v. Shackelford, 462 F.3d 794, 796 (8th Cir. 2006). When the government urges a sentence enhancement or upward departure, as in this case, "[w]hat evidence will be deemed sufficiently reliable to satisfy [the government's] burden is for the district court[] to determine, exercising the same fact-finding faculties they are daily

called upon to utilize in a myriad of situations." United States v. Wise, 976 F.2d 393, 403 (8th Cir.) (en banc), cert. denied, 507 U.S. 989 (1993). When the government's evidence consists of a law enforcement officer's hearsay testimony as to how a crime victim or co-conspirator described the defendant's conduct, the district court may consider that testimony "if sufficiently reliable reasons demonstrate the testimony is probably accurate," a determination "committed to the sound discretion of the district court." United States v. Woods, 596 F.3d 445, 448 (8th Cir. 2010) (quotation omitted). Of course, the court's finding that the testifying officer was credible, and its ultimate death-resulted finding, are reviewed for clear error.

The determination of whether hearsay testimony is probably accurate and therefore sufficiently reliable turns on "factors such as the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence." United States v. Sheridan, 859 F.3d 579, 583-84 (8th Cir. 2017), and cases cited. Here, D.W.'s statements to law enforcement investigators on two occasions were consistent. In two separate interviews, D.W. said he bought the drugs from "J.," whom D.W. identified as Harris in a photo lineup, and shared the drugs with M.H. in D.W.'s home just hours before both men were found unconscious from overdoses. See Sheridan, 859 F.3d at 584 ("consistent nature and timing" of victim's allegations "support their reliability"). His admissions exposed D.W. to potential criminal liability; because D.W. died prior to trial, his statements against interest may have been admissible even at a trial under the Rule 804(b)(3) of the Federal Rules of Evidence. See Shackelford, 462 F.3d at 796 (that "statements qualified for at least one exception from the hearsay rule renders them more reliable").

In addition, D.W.'s statements were corroborated by non-hearsay evidence. D.W. described a purchase of capsules containing undisclosed fentanyl that mirrored three controlled buys from Harris described in the PSR and admitted by Harris in his guilty plea. D.W.'s cell phone call logs and Agent Ackland's cell site analysis placed

D.W. and Harris near one another at the time of the alleged purchase. And the cell site analysis of M.H.'s phone did not identify any movement by M.H. after D.W. shared the purchased fentanyl, supporting the contention that the fatal overdose resulted from the drugs D.W. purchased from Harris, not from any subsequent purchase after D.W. lost consciousness.

On this record, the district court did not abuse its discretion in concluding that Agent Ackland's testimony, to the extent it included hearsay, bore sufficient indicia of reliability to support its use in sentencing Harris. Accordingly, the court did not clearly err in finding that the government proved by a preponderance of the evidence that a death resulted from Harris's conduct and then granting the government's motion for an upward departure. Departing upward, the court imposed a sentence of 70 months' imprisonment. This sentence is consistent with upward departures we have approved under § 5K2.1 for drug distribution conduct that resulted in an overdose death. See United States v. Reif, 920 F.3d 1197, 1199 (8th Cir. 2019) (96 months); United States v. Bollinger, 893 F.3d 1123, 1127 (8th Cir. 2018) (130 months); Nossan, 647 F.3d at 827 (60 months). The court did not abuse its discretion by imposing a substantively unreasonable sentence.

The judgment of the district court is affirmed.

_____