# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 23-2937

_____

United States of America

*Plaintiff - Appellee*

v.

Markus Michael A. Patterson

*Defendant - Appellant*

_____

## No. 23-3039

_____

United States of America

*Plaintiff - Appellee*

v.

Gerald L. Ginnings

*Defendant - Appellant*

_____

## No. 23-3099

_____

United States of America

*Plaintiff - Appellee*

v.

Trevor Scott Sparks

*Defendant - Appellant*
_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 14, 2025
Filed: March 24, 2025
_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

This consolidated appeal arises out of a large, violent methamphetamine conspiracy mainly centered in Kansas City, Missouri. Trevor Scott Sparks, the alleged leader of the conspiracy, proceeded to trial and was convicted of conspiracy to commit money laundering, conspiracy to distribute more than 500 grams of methamphetamine, and two firearms-related offenses. Markus Michael A. Patterson and Gerald L. Ginnings both pled guilty to conspiracy to distribute more than 500 grams of methamphetamine, conspiracy to commit money laundering, and using a firearm in furtherance of drug trafficking. They each raise various issues on appeal, including challenges to the district court's[1] evidentiary rulings, sufficiency of the evidence, objections to the jury instructions, calculation of their applicable Sentencing Guidelines range, and the reasonableness of their sentences. We affirm.

_____

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

-2-

## I.    BACKGROUND

For over a decade, Sparks was involved in a methamphetamine trafficking ring that extended from Kansas City to St. Louis and Springfield, Missouri. He maintained a headquarters at 5501 Smart Avenue in Kansas City, which was typically stocked with multi-pound or multi-kilogram quantities of methamphetamine. Multiple co-defendants recounted delivering or storing methamphetamine in the house at Sparks' direction. The evidence at trial portrayed Sparks as a violent man. Witnesses described Sparks' use of firearms and brutality to protect and advance his drug trafficking activities. He would trade drugs for guns, point guns at people he believed were stealing drugs or money from the organization, and beat or torture people who got crossways with him. At one point, Sparks shoved a gun in the mouth of a co-conspirator because he suspected she was an informant. Sparks released her when he was satisfied that she was not working with law enforcement.

Markus "Unk" Patterson was a childhood friend of Sparks and an associate in the drug trafficking activity. Patterson worked as Sparks' enforcer and debt collector in the organization—sometimes engaging in violence on his behalf. Like Patterson, Gerald Ginnings' role in the drug trafficking conspiracy included transporting drugs, collecting proceeds, and occasionally disposing of evidence.

During the summer of 2018, Sparks suspected co-defendant David Richards had stolen $30,000 in cash and methamphetamine that Richards had been assigned to sell and collect. Another co-conspirator suggested that James Hampton might be aiding Richards. Sparks believed that Hampton's girlfriend, Brittanie Broyles, might also have information. Sparks and Patterson, among others, confronted Hampton and Broyles at a house in St. Louis, demanding to know Richards' whereabouts. Hampton agreed to drive Sparks to find the missing Richards, but the search for Richards turned out to be unsuccessful. When they got back to the house, a heated argument ensued.

Sparks began interrogating Hampton. Sparks and his associates, including Patterson, tied Hampton to a dining chair, struck him with a skillet, cut him with a knife, and drilled holes into his kneecaps. At one point, Patterson struck Hampton with a fake gun so forcefully that it broke. Throughout the ordeal, Hampton denied knowing anything about Richards' whereabouts or the money. The next morning, Sparks directed Patterson to obtain a tow truck, planning to transport Hampton and his car to Kansas City. Hampton was forced into the trunk of his car. Despite his weakened condition, Hampton momentarily escaped but Patterson and another associate chased him down, beat him more, and shoved him back in the trunk.

Patterson, Sparks, two other associates, and Broyles drove to Kansas City in the tow truck, with Hampton locked in the trunk of his car. They stopped and stayed at a hotel in Independence, Missouri. The car was seen shaking and rattling, as Hampton tried to escape from the trunk. Eventually, the men made it to Sparks' house, unloaded the car, and secured it in a detached garage. Hampton continued to shake the car in an effort to escape. Four days later, Ginnings drove the car to a remote area while Patterson followed. Based on the stench, it was apparent Hampton had been killed, and his body was decomposing. Hampton's car was then set on fire. Eventually, Hampton's charred remains were located by authorities in the trunk.

Fearing Broyles would talk about Hampton's torture, Sparks ordered her held at a hotel. Over the next couple of days, Broyles was moved from hotel to hotel until Sparks ordered Patterson and Ginnings to "get her out." Within hours, Broyles disappeared. Her body was eventually found in a Kansas City flea market parking lot with gunshot wounds to her head.

Sparks was charged with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a), (b), (c), and (s); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i), (ii), and (h); possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The government subsequently

dismissed the continuing criminal enterprise count. The jury convicted Sparks on all remaining counts, and the court sentenced Sparks to two concurrent life terms, a concurrent 240-month term, plus a consecutive 60-month term of imprisonment.

Patterson and Ginnings were each charged with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A), (B)(i), (ii), and (h); possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Patterson pled guilty to all counts and was sentenced to a total term of imprisonment of 560 months, which consisted of concurrent terms of 500 months, 240 months, and 120 months, plus a consecutive term of 60 months. Ginnings also pled guilty to all counts and was sentenced to a total term of imprisonment of 520 months, which consisted of concurrent terms of 400 months, 240 months, 120 months, plus a consecutive term of 120 months.

## II. DISCUSSION

### A. Sparks' Appeal

Sparks raises five issues: (1) the district court abused its discretion when it admitted evidence of Hampton's and Broyles' deaths; (2) the district court should have granted his motion for judgment of acquittal because there was insufficient evidence to sustain the convictions; (3) the district court should have instructed the jurors about drug-using cooperators and adopted his preferred wording on reasonable doubt; (4) the district court erred by applying a Sentencing Guidelines cross-reference predicated on first-degree murder; and (5) his life sentence is substantively unreasonable. We consider each in turn.

## 1. Admission of Evidence Related to the Murders

Sparks contends the district court abused its discretion by allowing evidence about the uncharged murders of Hampton and Broyles. He asserts this evidence was impermissible character evidence and unfairly prejudicial, particularly since the government dismissed the continuing criminal enterprise charge and instead pursued a standard drug conspiracy charge. We review the district court's evidentiary rulings for abuse of discretion, reversing only if an error affected the defendant's substantial rights or had more than a slight influence on the verdict. United States v. Cannon, 475 F.3d 1013, 1023 (8th Cir. 2007).

Evidence of uncharged acts is admissible if it is "intrinsic" to a charged drug conspiracy. Evidence is "intrinsic" if it is part of the charged conspiracy, shows its inner workings, or completes the story of how the conspirators operated. United States v. Ruiz-Chavez, 612 F.3d 983, 988 (8th Cir. 2010). In this case, evidence pertaining to the uncharged murders showed how Sparks protected his drug trafficking operations and maintained control over his organization. This evidence was admissible as it "completed the story" of the conspiracy, showed the conspiracy's nature and scope, and established Sparks' leadership role in it. See United States v. Noe, 411 F.3d 878, 887 (8th Cir. 2005).

Probative evidence is not subject to exclusion merely because it is prejudicial or graphic. Rule 403 of the Federal Rules of Evidence excludes probative evidence that is "substantially outweighed" by the danger of unfair prejudice. The relevance of the murders with regard to Sparks' leadership role and fear-based control was not outweighed by the risk of unfair prejudice, particularly in this situation when the court instructed the jury that "[t]he defendant is not on trial for any act or conduct not specifically charged in the indictment." We presume the jurors followed the court's instructions. See United States v. Pendleton, 832 F.3d 934, 947 (8th Cir. 2016) (rejecting prejudice argument due to limiting instruction about evidence of violence against a coconspirator). Further, given the overwhelming evidence of guilt, any potential prejudice from admitting this evidence was harmless, as Sparks

has not shown admission of the evidence affected his substantial rights. See United States v. Broussard, 87 F.4th 376, 379 (8th Cir. 2023) (noting that a defendant cannot show his substantial rights were affected when he did not claim a reasonable probability that, but for the introduction of the challenged evidence, he would not have been found guilty).

The district court did not err in denying Sparks' motion *in limine* to exclude the evidence, nor did it abuse its discretion in admitting the evidence.

### 2. *Sufficiency of the Evidence/Denial Rule 29 Motion*

Sparks contends he did not own the house on Smart Avenue and that while he might have frequented the house, it was not his residence. He also points to the fact that he was not involved in any undercover buys. Sparks asserts the government's case rested on the testimony of unreliable witnesses and co-defendants. We apply the same standard of review to sufficiency of the evidence challenges as we do to the denial of a Rule 29 motion for acquittal. United States v. Broeker, 27 F.4th 1331, 1335 (8th Cir. 2022). We review the evidence *de novo*, interpreting it in the light most favorable to the jury's verdict and affirming if any rational juror could find every element beyond a reasonable doubt. United States v. Nolen, 536 F.3d 834, 842 (8th Cir. 2008).

Sparks' attempt to distance himself from the house is inconsistent with the evidence presented at trial. Sparks was arrested when he was at the house. While the utilities for the house on Smart Avenue were listed in the name of Sparks' girlfriend, witnesses testified that Sparks financed the property, and he would stay there. Physical evidence of Sparks' role in the drug trafficking organization—firearms, methamphetamine, cash, and drug ledgers—was seized from the house. See United States v. Lewis, 976 F.3d 787, 794 (8th Cir. 2020) (sustaining drug conspiracy conviction based on physical evidence and corroborated testimony).

There is ample evidence in the trial record of Sparks' involvement and role in the conspiracy. Witness testimony demonstrated that Sparks financed, controlled, and used the house on Smart Avenue to store drugs, he regularly carried guns during drug deals, and he used guns to intimidate others. See United States v. Aponte, 619 F.3d 799, 804–05 (8th Cir. 2010) (collecting cases that infer possession of contraband based on ownership and control). In addition, co-conspirators testified about the violent tactics Sparks used to control others and collect debts. While Sparks contends the testimony was unreliable, witness credibility is within the jury's sole discretion. Nolen, 536 F.3d at 842.

### 3. Jury Instructions

The district court declined to give two jury instructions that Sparks requested—a cautionary instruction about drug-user cooperators and a more recent version of the model reasonable doubt instruction that expressly cites "lack of evidence" as a basis for reasonable doubt. We review jury instructions for abuse of discretion. In doing so, we consider whether the instructions provided adequate and accurate guidance of the law to the jury. United States v. Collier, 932 F.3d 1067, 1076 (8th Cir. 2019).

Sparks proposed an instruction, relying on United States v. Payton, 636 F.3d 1027 (8th Cir. 2011), that stated:

> If a witness who has cooperated with the government is or was a drug user, there are reasons his or her testimony should be considered with great care. A regular user of narcotics has a constant need for supply of drugs and for money to support his habit and also may have an abnormal fear of imprisonment in which his supply of drugs might be cut off. Additionally, a witness who was under the influence of drugs or alcohol at the time of a particular event may have an impaired recollection of that which occurred during that event. These are special circumstances which you may consider in weighing testimony of this kind. You of course may give the testimony such weight as you think proper after considering all relevant circumstances.

A defendant, however, is "not entitled to a particularly worded instruction as long as the instructions fairly and adequately instruct the jurors." United States v. Brown, 88 F.4th 750, 759 (8th Cir. 2023). Here, the district court instructed the jury to scrutinize witness credibility, to consider any potential biases, and to weigh whether an informant or cooperator testified in hopes of leniency. Sparks cross-examined the witnesses about their drug use. The deficiencies in the witnesses' testimony, recollection, or motives, which Sparks has raised concerns about, were issues he put before the jury. Considering the instructions as a whole, the district court did not abuse its discretion when it declined to give Sparks' requested instruction.

Likewise, the district court's use of the previous version of the model reasonable doubt instruction fairly and accurately conveyed the government's burden to the jury. Sparks challenges the instruction because it did not expressly tell the jury that "reasonable doubt may arise from careful and impartial consideration of all the evidence, *or from a lack of evidence*." Sparks emphasized the lack of evidence during his closing argument. He was able to get his theory of defense before the jury. This Court has previously concluded that it is not an abuse of discretion to give the previous version of the model instruction. See United States v. Owens, 966 F.3d 700, 705–06 (8th Cir. 2020). Sparks' challenges to the jury instructions are unavailing.

### 4. *Murder Cross-Reference under U.S.S.G. § 2D1.1(d)(1)*

Sparks contends the district court erred when it overruled his objection to applying the cross reference for first-degree murder because the evidence is "incredibly clear" that Sparks did not shoot Broyles and the evidence is "incredibly unclear" regarding when and how Hampton was killed. We review the district court's factual findings supporting a sentencing enhancement for clear error and the application of the guidelines to the facts *de novo*. United States v. Mims, 122 F.4th 1021, 1034 (8th Cir. 2021).

U.S.S.G. § 2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder)" to find the base offense level. Section 1B1.3(a)(1)(B) includes all acts "that occurred during the commission of the offense of conviction, in preparation of that offense, or in the course of attempting to avoid detection or responsibility for that offense."

The cross-reference does not require Sparks to be the murderer. The district court found that Sparks masterminded and directly participated in ambushing, torturing, and abducting Hampton, that Sparks ordered Broyles' murder, and that both killings advanced the conspiracy. Witness testimony and unobjected-to facts in Sparks' Presentence Investigation Report ("PSIR") established Sparks' leadership role in the drug trafficking conspiracy, his involvement in Hampton's death, and his directions to Ginnings and Patterson to silence Broyles by killing her. The district court committed no error, clear or otherwise, when it applied the murder cross-reference.

Sparks also asserts application of the cross-reference violates his constitutional rights to a jury trial and due process. There was no jury trial violation, as Sparks' sentence did not exceed a statutory maximum or increase a mandatory minimum. See United States v. Jackson, 782 F.3d 1006, 1013 (8th Cir. 2015). Nor was there a due process violation, as Sparks objected to the PSIR, filed a sentencing memorandum, and was offered an opportunity at sentencing to raise further objections, which he chose not to do. See Smith v. United States, 206 F.3d 812, 813 (8th Cir. 2000) (per curiam). The district court's reliance on corroborated trial evidence and unobjected-to information in the PSIR is permissible. See United States v. Brooks, 648 F.3d 626, 630 (8th Cir. 2011) (per curiam).

Finally, if any error exists, it would be harmless because enhancements for drug quantity, weapons, and Sparks' leadership role triggered the same Sentencing Guidelines range of life. See United States v. Goolsby, 209 F.3d 1079, 1082 (8th

-10-

Cir. 2000) (per curiam); United States v. Espinoza, 885 F.3d 516, 525 n.2 (8th Cir. 2018) (citing U.S.S.G. Ch. 5, Pt. A cmt. 2). Further, regardless of the cross-reference, there is no reversible error because the district court stated it would have imposed the same sentence based on Sparks' leadership role and extreme brutality. See United States v. Holmes, 87 F.4th 910, 914 (8th Cir. 2023) (stating a district court's incorrect Sentencing Guidelines calculation is harmless when the court indicates it would have imposed the same sentence even if a lower range applied).

### 5.  *Reasonableness of the Sentence*

Sparks argues his life sentence is greater than necessary under 18 U.S.C. § 3553(a), particularly given that co-defendants Patterson and Ginnings received a lesser sentence. We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Peithman, 917 F.3d 635, 653 (8th Cir. 2019). A district court may vary among co-defendants based on differences in culpability or leadership. See United States v. Canania, 532 F.3d 764, 775 (8th Cir. 2008). We presume a within-Guidelines sentence is reasonable, and, for the following reasons, Sparks has not rebutted that presumption.

The district court found that Sparks orchestrated the conspiracy, engaged in multiple acts of extreme violence, and directed similar acts of violence. The court relied on Sparks' violent criminal history, the large quantity of drugs involved in the conspiracy, and his repeated acts of brutality. Additionally, the court considered the need to protect the public, deter similar wrongdoing, and promote respect for the law. Based on these permissible sentencing considerations, the district court found Sparks' conduct to be "some of the most evil behavior" seen in that court. The district court did not abuse its wide sentencing discretion when it imposed a life sentence.

B.     Patterson's Appeal

Patterson also challenges application of the cross-reference for murder under U.S.S.G. § 2D1.1(D)(1), and asserts the district court erred in calculating the drug quantity attributable to him.

### 1.     Murder Cross-Reference under U.S.S.G. § 2D1.1(d)(1)

Patterson contends the district court erred in applying the murder cross-reference because he was not involved in Hampton's death, Hampton's death was not foreseeable, and the murders exceeded the conspiracy's scope.  The evidence presented at trial contradicts Patterson's contentions.  There is evidence in the record indicating that Patterson beat Hampton, kept him trapped in the trunk, ignored Hampton while his life ebbed away, and helped dispose of Hampton's body.  Patterson notes the time and exact manner of Hampton's death is unknown.  But, at a minimum, Patterson aided and abetted Hampton's murder by following Ginnings to a rural area with Hampton in the trunk and driving Ginnings away from the scene after the car was set on fire, which alone would permit application of the murder cross-reference.  See United States v. Nichols, 76 F.4th 1046, 1055–56 (8th Cir. 2023) ("[T]ransporting a shooter to or from the scene may suffice to establish aiding and abetting." (citing 18 U.S.C. § 2)).

The district court did not err by applying the murder cross-reference when calculating Patterson's Sentencing Guidelines range.

### 2.     Drug Quantity Calculation

Patterson asserts the district court committed clear error when it attributed at least 15 kilograms of methamphetamine to him.  However, co-conspirator testimony and Patterson's own admissions demonstrate this conspiracy moved ten kilograms weekly.  And this conspiracy spanned multiple years.  While Patterson takes issue with the district court's reliance on corroborated trial testimony and the PSIR, our

precedent explains that a district court may rely on such evidence at sentencing without violating due process.  See United States v. Harris, 44 F.4th 819, 822–23 (8th Cir. 2022).  The district court did not err in its drug quantity calculation.

Lastly, any error in calculating Patterson's Sentencing Guidelines range is harmless because the district court stated it would impose the same sentence based on the sentencing factors set forth in 18 U.S.C. § 3553(a).  See United States v. Martinez, 821 F.3d 984, 988–89 (8th Cir. 2016).

### C.    Ginnings' Appeal

Ginnings raises a single issue on appeal—that is, the district court erred when it calculated his applicable Sentencing Guidelines range because it relied on unspecified trial evidence, which is a departure from Rule 32 and a due process violation.  Ginnings contends the nine-level increase under U.S.S.G. § 2D1.1(d) for the murder cross-reference should not have been applied because the district court failed to sufficiently articulate its findings of fact.

We typically review constitutional challenges to the Sentencing Guidelines *de novo*.  See United States v. Ellefson, 419 F.3d 859, 865 (8th Cir. 2005).  However, a constitutional issue raised for the first time on appeal is reviewed for plain error.  See United States v. Ellis, 815 F.3d 419, 420–21 (8th Cir. 2016).

District courts may consider evidence from a co-defendant's trial at sentencing, including hearsay, provided it has "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a); see also FED. R. EVID. 804(b)(1)(A); United States v. Sheridan, 859 F.3d 579, 583 (8th Cir. 2017).  This Court has not required the district court to provide exhaustive detail if the context and record make its reasoning clear.  See  United States v. McGlothen, 556 F.3d 698, 702–03 (8th Cir. 2009).

Here, the district court stated it had considered the parties' briefing, corroborated trial evidence, and exhibits. In addition to his own admissions of involvement to law enforcement, evidence in the record demonstrated Ginnings' involvement in Hampton's and Broyles' murders. On this record, Ginnings cannot show a violation of his due process rights, as he was afforded an opportunity to object and submit arguments to the court. Smith, 206 F.3d at 813. Ginnings has not shown error, let alone plain error.

## III.  CONCLUSION

The district court's judgment in each case is affirmed.

_____