# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1250

_____

United States of America

*Plaintiff - Appellee*

v.

Joseph Patrick Fitzgerald

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Central

_____

Submitted: February 14, 2025
Filed: July 2, 2025

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Joseph Patrick Fitzgerald pleaded guilty to possession of a firearm by a prohibited person, 18 U.S.C. §§ 922(g)(1), (g)(9), and 924(a)(2). The district court[1] applied a four-level enhancement for possessing a firearm in connection with

_____

[1]The Honorable Leonard T. Strand, then Chief Judge, United States District Court for the Northern District of Iowa.

another felony, U.S.S.G. § 2K2.1(b)(6)(B), and sentenced him to 120 months in prison. We affirm.

Jill Walker filed an Iowa petition for relief from domestic violence alleging that Fitzgerald lived with her and "[p]ulled [her] by the hair out of bed," "[h]eld a knife to [her] neck," and "pointed [a] shotgun at [her]." She claimed that Fitzgerald's "excessive verbal abuse . . . suggests physical abuse to come." She then withdrew the petition.

Six months later Walker called 911 and told the operator that Fitzgerald was threatening her life. She said in the recorded call that "yesterday he had a gun to my head, today so far it's just words but I'm tired of it. I've been threatened every day for the last five days." When the operator asked how he was going to kill her, Walker said "he's gonna point a gun at me and then he's going to mount my head." Walker, sobbing, reported that Fitzgerald still had the gun "under his bed" but not on him "right now."

When police arrived, Fitzgerald was on the balcony and refused to let officers inside. The officers insisted that they needed to check on Walker. During the conversation, Fitzgerald went back into the house twice. After Walker gave police permission to break open the door, Fitzgerald allowed them inside. Body camera footage shows Walker, still crying, telling police that Fitzgerald was threatening her. She said that "yesterday, or not yesterday, the day before, no it was yesterday" she sat "in the bathroom for an hour and a half waiting for him to get . . . out of this house so I could be safe." Walker repeated to the officer that "the other day and yesterday again he had a shotgun to me." The officer began to ask Walker another question, and Walker interrupted with "what more do I have to say?" Then Walker told the officer that Fitzgerald had pointed the shotgun at her about ten minutes earlier. Police found a loaded shotgun hidden in the shower behind a curtain. Meanwhile, Fitzgerald told other officers there was not a gun in the house and that he did not own a gun because he was a felon. He later pleaded guilty to being a felon in possession.

Walker died before sentencing, so the district court relied on Walker's sworn petition, the 911 recordings, and the body camera footage and found Fitzgerald possessed the gun in connection with another felony—domestic abuse assault, Iowa Code § 708.2A(2)(c). *See* U.S.S.G. § 2K2.1(b)(6)(B); *see also United States v. Holm*, 745 F.3d 938, 941 (8th Cir. 2014) ("A crime designated as an aggravated misdemeanor under Iowa law falls within the Guidelines definition of felony offense."). Fitzgerald claims that Walker's hearsay statements were not sufficiently reliable because the statements were unsworn, oral statements; "[h]er story changed"; and the Government did not present sufficient corroboration. We review "for clear error a district court's finding that a defendant possessed a firearm in connection with another felony offense." *United States v. Mitchell*, 963 F.3d 729, 731 (8th Cir. 2020).

"A district court has wide discretion at sentencing as to the kind of information considered or its source." *United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009). "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). "The relevant information a court may consider includes . . . uncorroborated hearsay, provided the defendant is given a chance to rebut or explain it." *Pratt*, 553 F.3d at 1170 (cleaned up). Whether hearsay "is probably accurate and therefore sufficiently reliable turns on factors such as the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence." *United States v. Harris*, 44 F.4th 819, 822–23 (8th Cir. 2022) (cleaned up).

Walker's story—told through her sworn petition and the recorded 911 call and bodycam—was mostly consistent. She told police in the 911 call that Fitzgerald was threatening her, the same claim she made in a petition for relief from domestic violence six months earlier. She also told police Fitzgerald pointed a gun at her.

Fitzgerald argues Walker's statement from the 911 call that Fitzgerald had not pointed a gun at her and Walker's later statement to police that he had pointed a gun at her "about ten minutes ago" were "contradictory." Not necessarily—video evidence shows Fitzgerald going inside twice while police waited outside, giving Fitzgerald ample time to point the gun after the 911 call. And Walker maintained that Fitzgerald had pointed a gun at her the day before both in the 911 call and when officers arrived.

The timing and nature of Walker's statements also suggest reliability. Walker told the 911 operator that someone was threatening her life and soon after repeated the allegation to officers. She was distraught during the 911 call and was crying in the audio recordings and bodycam video. The district court heard the phone call and watched the bodycam footage, so it could evaluate Walker's credibility and consider her demeanor.

Walker's earlier sworn petition further corroborates her complaints about Fitzgerald's threats. True, Walker withdrew her petition for relief and the two continued living together, but that does not make the statement inconsistent with Walker's later reports that Fitzgerald was again threatening to kill her.[2] "[Walker]'s statements, though hearsay, were made under circumstances indicating sufficient reliability, and [Fitzgerald] offered no evidence to rebut them." *United States v. Clark*, 932 F.3d 1064, 1067 (8th Cir. 2019).

Fitzgerald also argues that—even with the hearsay statements—the evidence is not enough to show that he possessed the shotgun in connection with domestic abuse assault. We disagree. "A person commits an assault when . . . [he] [i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another." Iowa Code § 708.1(2)(c). An assault is domestic abuse assault when committed "between . . . household members

---

[2]The parties dispute whether Fitzgerald lying to officers corroborates Walker's accusation about the threats. Even without the lie, there is sufficient indicia of reliability of the accuracy of Walker's statements.

-4-

who resided together at the time of the assault." Iowa Code § 236.2(2)(a). Walker's sworn statement and the audio and video recordings suggest Fitzgerald pointed a shotgun at Walker and threatened her while they lived together, so the district court did not clearly err by finding that Fitzgerald used the firearm in connection with another felony offense.

Affirmed.

_____